**WILSON et al. v. UNITED STATES et al.**
No. 924.

United States District Court
W. D. Missouri, S. W. Division.
Aug. 24, 1953.

Stanley P. Clay, Joplin, Mo., for plaintiffs.

James E. Kilday, Francis J. Heazel, Jr., Stanley N. Barnes, Sp. Assts. to Atty. Gen., Washington, D. C., Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief, for defendants.

Allen Crenshaw, Washington, D. C., for Interstate Commerce Commission.

Before STONE, DUNCAN and RIDGE, District Judges.

RIDGE, District Judge.

On reconsideration of a Division No. 5 order favorable to petitioners' application for a certificate of convenience and necessity as a contract motor carrier, the Interstate Commerce Commission (two members dissenting and one member not participating) found "that applicants (petitioners) * * * have failed to show that the proposed operation will be consistent with the public interest and the national transportation policy, and that the application should be denied." Petitioners brought the instant review action to annul, set aside and enjoin said order. We have jurisdiction in the premises by virtue of Sections 1336, 1398, 2284, and 2321–2325, Title 28, U.S.C.A.

In their complaint, petitioners allege that the report and order of the I.C.C. so entered is unjust, arbitrary, unreasonable and without any basis in fact or law, in that the I.C.C. erroneously (a) considered a certificate of convenience and necessity of Frozen Food Express, a protesting motor carrier in the proceeding, which was issued subsequent to the date of filing of peti-

tioners' application with the Commission; (b) considered the operating authority of Frozen Food Express and Refrigerated Transport, Inc., when said carriers did not petition for reconsideration of the Division No. 5 order; (c) considered the operating authority of Refrigerated Transport a protesting motor carrier which was not placed in the record; (d) and the operations of Refrigerated Transport thereunder when that motor carrier submitted no evidence as to its fitness, operations and equipment, to reasonably provide the supporting shipper with adequate motor carrier service; (e) considered a trip-lease arrangement of Frozen Food and Refrigerated Transport when the agreement relating thereto was not in the record before the Commission; (f) and was in fact shown to be an illegal operation by said motor carriers; (g) in incorrectly interpreting and construing the scope of operating authority of Frozen Food as a common carrier; (h) and failed to consider petitioners' challenge of the Examiner's qualifications that heard and granted the application of Frozen Food for such authority; (i and j) considered rail service as being direct and adequate to meet the particular needs of the supporting shipper when no evidence was offered by rail protestants and connecting rail carriers in respect to their willingness and ability to meet the particular needs of such shipper; and (k) in not finding as matter of law that the supporting shipper was entitled to motor carrier service as well as rail service.

■ In light of the findings and order entered by the I.C.C., and notwithstanding the several objections raised by petitioners, we believe the only issue that can legally be adjudicated in this review proceeding is: Are the findings and order of the Commission supported by substantial evidence? By briefs and argument before the Court, it is revealed that the substance of petitioners' attack is that the order of the Commission is not supported by substantial evidence. Objections which petitioners proffer that go to the soundness of the reasoning by which the Commission reached its conclusion: that the order of the Commission is inconsistent with conclusions reached by it in similar cases; that some evidence was improperly considered, and that inferences drawn from the evidence were unwarranted, are matters which we are not authorized to consider in this review proceeding. Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941. The determination by the Commission "that applicants (petitioners) have failed to show that the proposed operation will be consistent with the public interest and the national transportation policy" is a question as to which the findings of the Commission are conclusive if supported by substantial evidence, unless there is some irregularity in the proceeding or some error in the application of proper rules of law. Western Paper Makers' Chemical Co. v. United States, supra; Virginia Stage Lines v. United States, D.C., 48 F.Supp. 79; O'Malley v. United States, D.C.Minn., 38 F.Supp. 1.

■ The only semblance of attack as to the regularity of proceedings before the I.C.C., tendered by the instant complaint, is that the Commission on reconsideration considered the operating authority of Frozen Food Express, granted after petitioners' application was filed, and that of another opposing motor carrier when both such carriers did not petition for reconsideration of the Division No. 5 order. As to that proposition, petitioners concede that they "find no legal authorities approving or disapproving" such procedure, but they assert, "This Court should give consideration to the same" in the particular setting of this case. We do, and find it to be without merit.

■ By paragraphs 6 and 7, Section 17 of the I.C.C. Act, 49 U.S.C.A. § 17, pars. 6 & 7, as well as Section 7(a) of the Administrative Procedure Act, Title 5 U.S. C.A. § 1007(a), the whole Commission is vested with authority to reverse, change or modify a decision or order of a division thereof and to review the same on the record made in the division, or at an Examiner's hearing. When it does so, we know of no rule or statute that would require or permit the whole Commission to consider only a part of such record, or which would

prohibit the Commission, a division, or Examiner thereof, from considering the authority of other motor carriers issued and outstanding at the time a hearing is held, particularly when, as here, it was submitted by a protesting motor carrier appearing in opposition to an application. The Commission could even take official notice of such orders and certificates of convenience and necessity. Crichton v. United States, D.C., 56 F.Supp. 876, affirmed per curiam, 323 U.S. 684, 65 S.Ct. 559, 89 L.Ed. 554; Summer & Co. v. Erie R. Co., 262 I.C.C. 43, 51. Reconsideration of the divisional order was granted on petition of rail carriers appearing as protestants in the proceeding before the Commission. In granting reconsideration on that petition, the Commission "reopened" the proceedings "for reconsideration on the present record." (*Order of Comm.*) In light of such order, there can be no question but that the entire record made in the division, and before the Examiner, was properly before the whole Commission. It could not be otherwise, though reconsideration was granted at the behest of only one protestant appearing in the proceeding. The record so made, together with all evidence adduced by any protestant appearing in the proceeding could be properly considered, whether they individually petitioned for reconsideration or not. A partial consideration of a record by the Commission would, in our opinion, have subjected an order made by it to attacks far more serious than those petitioners level against the instant order.

■ In its order, the Commission defined the issue which it considered should be resolved "(i)n determining whether the proposed contract-carrier operation will be consistent with the public interest, * *." It stated the issue as follows: "We must ascertain whether the reasonable requirements of the supporting shipper may adequately be met by available carriers." In the setting of this contract-carrier proceeding, we believe the Commission properly conceived and defined the issue to be resolved, before petitioners were entitled to a certificate of convenience and necessity on their application. In the past, the

Commission has stated in a number of cases before it that "in order to foster a sound transportation system, existing motor carriers should normally be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them as against any person now seeking to enter the field of motor carrier transportation in circumstances such as are here disclosed." Louis Jagel & Louis A. Jagel, Extension, 5 F.C.C., 94; Forrest Worm & Fred Worm —Extension of Operations, 32 M.C.C. 641. In the expertise of the Commission, we believe it to be authorized and empowered under the I.C.C. Act to so define the issue to be resolved on an application such as here involved. We accept such as being the legal issue before the Commission, and in this review proceeding shall confine our consideration as to whether that issue as resolved by the Commission is supported by substantial evidence.

In resolving that issue, the Commission found and the record here reveals "that the supporting carrier presently is shipping cheese, fresh, frozen, and dried eggs, and dressed poultry from its plants in Kansas to various principal points in the involved destination territory." The destination territory sought in the application was "all points in the States of Louisiana, Mississippi, Alabama, Georgia, Florida, Tennessee, South Carolina and North Carolina" by irregular routes. The Division No. 5 order granted authority to specific locations in that territory as to which the supporting shipper was presently making shipments from its plant in Kansas. The evidence establishes and the Commission found that the supporting shipper was presently making shipments of the above-mentioned dairy products as follows: Approximately 50 per cent of the involved traffic has been transported by shipper, 5 per cent by consignees, 10 per cent by nonregulated carriers, 20 per cent by motor carriers, and 15 per cent by rail."

■ As processors and packers of cheese, frozen and dried eggs, and dressed poultry, the supporting shipper is revealed as having plants in ten separate cities in Kansas from which it presently makes

shipments. It contended before the Commission that of these ten points of origin, common carrier motor truck service was presently available from only two points. The Commission construing the scope of operating authority of Frozen Food Express, one of the protesting carriers in the instant matter, found that that carrier was authorized to transport "frozen eggs and frozen poultry" from all points of origin in the State of Kansas "to Memphis and points in Louisiana and Mississippi." Petitioners here assert that the Commission misinterpreted and misconstrued the carrier authority of Frozen Food. They would now have us construe that authority and rule that Frozen Food is limited in its authority to transport such commodities only from two points in Kansas, and as a consequence of such ruling decree that the supporting shipper does not have motor carrier service available to it at all points of origin of its shipments. The scope of lawful operations by a motor carrier is both a legal and factual matter peculiarly within the authority of the I.C.C. to resolve in the first instance. Unless we can say as a matter of law that the Commission's interpretation of Frozen Food's authority as shown by the record herein cannot be sustained, we are bound by any factual determination concerning the same made by the Commission. If the authority granted Frozen Food is ambiguous in its terms, then "its interpretation is for the Commission; and the courts cannot disregard such interpretation * * unless it is clearly erroneous or arbitrary". Adirondack Transit Lines v. U. S., D.C., 59 F.Supp. 503, 504; affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393; United Truck Lines v. I. C. C., 9 Cir., 189 F.2d 816. The certificates of authority of Frozen Food are contained in the record. It has three such certificates. In support of the contention that the Commission "misinterpreted and misconstrued" Frozen's authority, petitioners level their attack as to that granted Frozen in MC–108207 (Sub. 12). Petitioners contend that the (Sub. 12) certificate is the only one pertinent in this case. After blocking out the authority therein defined, petitioners in their brief (p. 13) state: "At the outset, it is clear that the authority clause (of Sub. 12) is inexpertly drawn and ambiguous. Possibly it is susceptible to several interpretations." That being the legal evaluation to be given to said certificate, then the Commission's interpretation thereof is final.

The whole Commission, as did Division 5, in its order defined the extent of Frozen's authority, and concluded that "(b)y combining such authorities it has authority to operate between Kansas, on the one hand, and Mississippi and Louisiana, on the other, with certain limitations," as to frozen eggs and frozen poultry. An examination of Frozen's certificates reveals that such interpretation of its authority may be gleaned therefrom. In Sub. 12, supra, Frozen is authorized to transport frozen foods and fresh meats, over irregular routes: "Between Memphis, Tennessee, and points in Arkansas, Louisiana and Texas, on the one hand, and, on the other, points in Iowa, Kansas and Nebraska." Certain restrictions are delineated in said certificate. The Commission considered the same as not being relevant to the determination of the extent of Frozen's authority so far as the instant matter is considered. We think the Commission's conclusion was correct. A consideration of such provision reveals that when shipments originate at certain points in Kansas, transportation thereof is restricted to a certain designated territory. We do not perceive those restrictions to delimit Frozen's authority to pick up shipments at all other places and points in Kansas, as petitioners contend. Subject to the restricted deliveries above referred to, Frozen can pick up and deliver shipments of frozen foods to and from all points in Kansas and the other territory referred to in said certificate. By tacking that authority to other authority held by Frozen, it has "authority to operate between Kansas, Mississippi and Louisiana." Cf. Transport Corp of Virginia—Ext. of Op.— 43 M.C.C. 716. The right of "tacking" authority is a matter wholly within the competence of the I.C.C. and its resolution of such a right will not be disturbed, un-

less it is established as being misapplied as a matter of law. No such showing is here made. Petitioners' contention amounts to this: the Commission was wrong in its interpretation of the grammatical construction of Frozen Food's authority. We are not at liberty to take issue with the Commission in the realm of semantics when ambiguity is conceded. The Commission and Division No. 5 had the right to interpret Frozen Food's operating authorities as it did. We perceive no illegality as a matter of law in the interpretation so made by the Commission. Therefore, we cannot substitute any interpretation of ours in place of that of the Commission.

 Consequently, there is a rational basis for the Commission's finding that Frozen Food is authorized to transport "frozen eggs and frozen poultry" from all points in the State of Kansas, to Memphis, Tennessee, and all points in the States of Louisiana and Mississippi. To that extent, the conclusion of the Commission that the supporting shipper to petitioners' application has available "single-line service for the transportation of frozen eggs and frozen poultry to Memphis and points in Louisiana and Mississippi," is invulnerable to attack here, and to that extent the order is sustained by the substantial evidence.

 There was evidence before the Commission from which we believe it could conclude, as it did, that two-line service was available to the supporting shipper for part of its products, from point of origin of shipments to point of destination in the remaining territory covered in the application of petitioners which is not served direct by Frozen Food as above referred to. The evidence established that Frozen Food in connection with Refrigerated Transport, through New Orleans as a gateway, provides transportation for "frozen eggs and frozen poultry" from Kansas to Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee. Refrigerated Transport appeared in opposition to the application of petitioners before the Commission, but submitted no evidence. Its op-

erating authority, however, was made a part of the record at the Examiner's hearing (R. 177). It is not included in the transcript of the record filed in this Court. Therefore, we are bound by the finding of the Commission as to the lawful operating authority of Refrigerated Transport. It was petitioners' obligation to see that such authority was made a part of the instant record, before they could ask us to evaluate it as a matter of law. United States v. Northern Pacific Ry. Co., 288 U.S. 490, 53 S.Ct. 406, 77 L.Ed. 914; Spiller v. Atchison T. & S. F. Ry. Co., 253 U.S. 117, 125, 40 S.Ct. 466, 64 L.Ed. 810. Frozen Food in the past has made connections with Refrigerated Transport and entered into agreements to trip-lease its equipment with Refrigerated Transport, whereby the equipment of former, together with its drivers, is turned over to Refrigerated, at New Orleans gateway, for continuous transportation of "frozen eggs and frozen poultry" into Refrigerated's territory. Such trip-lease agreements are executed by said carriers as individual shipments demand. Refrigerated's ability to complete such transportation of Frozen Food might be presumed from the record before us as to "frozen eggs and frozen poultry." There was evidence before the Commission from which it could reasonably conclude that said carriers had interchanged transportation as to such products in the past and that they had been properly transported. Testimony as to Refrigerated's ability and willingness to provide the supporting shipper with refrigeration motor carrier service was given by witnesses appearing on behalf and in the employ of Frozen Food. The inference therefrom is that Frozen Food has available equipment for the movement of commodities covered by the application; that by the trip-lease arrangements commodities loaded in Frozen's equipment, together with its drivers, would be used to transport to all destination points covered in the application, by Refrigerated; that both such connecting operating authorities are limited to frozen poultry and frozen eggs.

 Petitioners contend that the trip-lease agreement between Frozen and

Refrigerated is not supported by substantial evidence. There was evidence before the Commission that such trip-lease agreement was orally made, but when put into effect a written lease was executed with respect to each shipment. Such oral agreement was outlined in detail by Frozen's President. We know of no requirement of law that such an agreement must be in writing. The testimony of Frozen's President offered a substantial basis for finding by the Commission of such an oral arrangement. Petitioners also assert that the arrangement under said oral agreement whereby Frozen's equipment and drivers are continued in service under Refrigerated's authority is an illegal operation. As to the legality of such arrangement, it is sufficient to say that the Commission has apparently put its stamp of approval thereon by the instant order, and having done so on a factual basis, we know of no rule that would authorize us to hold such to be an illegal operation as a matter of law. Cf. In re Edward Michael Gardner, 7 F.C.C., par. 31,-571.10.

In light of the foregoing, we believe there was substantial evidence before the Commission from which it could find and conclude that the supporting shipper has available motor carrier service for the transportation of "frozen eggs and frozen poultry" to all points to which service is desired so as to sustain the conclusion of the Commission that "the proposed operation (would not) be consistent with the public interest and the national transportation policy." To that extent, the order must receive our approbation.

But that is not to hold that a denial by the Commission of all the authority requested in petitioners' application filed with the Commission can or should be sustained. Petitioners' application sought authority to transport "dairy products as classified in Appendix B to the report in Modification of Permits-Packing House Products, 46 M.C.C. 23." The Commission found that "the supporting shipper presently is shipping cheese, fresh, frozen and dried eggs, and dressed poultry from its plants in Kansas." Division No. 5, in its order makes a like finding and in addition

thereto found that said shipper "also contemplates processing and shipping butter from and to the same points." The record before the Commission reveals that the supporting shipper introduced substantial evidence of its reasonable need for motor transportation of all the above dairy products. The evidence is that frozen eggs and dressed poultry are shipped in vehicles kept at a temperature of 15° Fahrenheit or below, whereas butter, cheese, shell and dried eggs require a temperature above freezing; that the two groups of commodities cannot be transported in the same vehicle. The Commission's order shows on its face that the whole Commission did not, as Division 5 did do, consider the "reasonable requirements" of the supporting shipper for motor carrier service as to all products processed and shipped by it.

The Commission's order is singularly confined to a finding of available transportation of "frozen eggs and frozen poultry." Frozen Food Express is not shown by the instant record to have any operation authority to transport dairy products, particularly butter, cheese, shell and dried eggs, from points of origin of shipments in Kansas. Hence, it has no authority to connect with Refrigerated as to those points, even if Refrigerated might be authorized to transport them. There was substantial evidence before the Commission that the supporting shipper was in economic need of motor carrier service for such shipments. The conclusion of the Commission that the application of petitioners should be denied *in toto* because the supporting shipper has available rail and motor carrier service to meet its "reasonable requirements" is not sustainable by even a scintilla of evidence so far as "butter, cheese, fresh and dried eggs" are here to be considered. The supporting shipper's needs must be considered in a contract motor carrier's application to the extent of meeting its reasonable transportation requirements. The Commission so held in Upper Columbia River Towing Company Purchase, 8 F.C.C., par. 31,968, among other factors, "in determining the question of consistency with the public interest." Division No. 5, by its order, reveals that it gave consideration to such fac-

tors. We do not find that the whole Commission did so.

Present rail service to the extent that it has been utilized by the supporting shipper was established as being adequate to transport such shipper's products, but not meet all its reasonable requirements. Evidence before the Commission was that rail service provides 4 to 6 days' transit time to destination points involved; that such service to the extent presently used was satisfactory to shipper only "because of lack of something better" (R., p. 121); that its economic need was for faster service because of fluctuating market price in transit of dairy products (R., p. 132). In their exceptions to the Examiner's report and their petition for reconsideration of the Division No. 5 order, the protesting rail carriers are revealed as not relying upon any adequacy of showing of rail service to meet the reasonable requirements of the supporting shipper. The contention then made by rail carriers and re-asserted by defendants here, is that the order of the Commission is sustained by substantial evidence by a showing that there is available motor carrier service to meet all the needs of such shipper. From what is above said, that does not appear as a fact in the record before us.

In light of the foregoing and upon consideration of the record before us, we cannot say that the findings and order of the Commission are not supported by substantial evidence as to available transportation for shipments of "frozen poultry and frozen eggs." However, such findings and order are not supported by substantial evidence as to other "dairy products as classified in Appendix B to the report in Modification of Permits-Pa king House Products, 46 M.C.C. 23," which is part of the authority requested and applied for by petitioners. The Division 5 order found that the two groups of commodities processed by the supporting shipper, that is "frozen eggs and dressed poultry" contrasted with "butter, cheese and shell and dried eggs," must be transported in separate vehicles because of different temperature requirements, and granted authority to petitioners in part, because of that transportation need of the supporting shipper and the limited transportation authority of Frozen Food Express. The whole Commission's findings and order are silent with respect thereto. There is nothing in the record before us which reveals that Frozen, or Frozen and Refrigerated as connecting carriers, have authority to or are able and willing to provide motor carrier service to the supporting shipper for all dairy products processed by it.

The order of the Commission should be reversed and set aside and these proceedings remanded to the Commission for further proceedings consonant with the foregoing.

It is so ordered.