**SALVINO**

v.

**UNITED STATES et al.**

No. 3454.

United States District Court
W. D. Washington, N. D.

Feb. 24, 1954.

278

E. K. Murray, Tacoma, Wash., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday, John Guandolo, Sp. Assts. to the Atty. Gen., Charles P. Moriarty, U. S. Atty., Seattle, Wash., for defendant.

Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., William L. Harrison, San Francisco, Cal., for Interstate Commerce Commission.

William B. Adams, Portland, Or., Henry T. Ivers, Seattle, Wash., for Intervenors.

Before POPE, Circuit Judge, BOWEN, Chief Judge, and LINDBERG, District Judge.

LINDBERG, District Judge.

This case involves an application for an injunction wherein plaintiff, Pasco Salvino, seeks relief from an order of the Interstate Commerce Commission requiring him to cease and desist from all operations in interstate or foreign commerce of the character found by the Commission to be beyond the scope of the authority granted to him.

Plaintiff holds a permit, No. MC-74647, as a contract carrier which so far as here pertinent authorizes transportation of factory supplies, canned and cold packed fruits and vegetables, and cannery supplies, between Seattle, Washington and Eugene, Oregon over a specified route serving the intermediate points of Tacoma and Chehalis, Washington and Portland and Salem, Oregon. This authority was granted as a result of a "grandfather" clause application, in the informal processing of which there was issued on September 3, 1937 a so-called compliance order granting plaintiff a permit authorizing him to transport "matches, match factory machinery and supplies, canned and cold packed fruits and vegetables, and cannery supplies" between the points above indicated. On April 1, 1938 a revised compliance order was entered changing the commodity description to read "matches, factory supplies, canned and cold packed fruits and vegetables, and cannery supplies," and in due course a permit in conformity with this order was issued.

Under the described authority to transport "factory supplies" plaintiff for many years has hauled paperboard, pulpboard, wrapping paper, potash, glue, zinc oxide, lampblack, and phosphorous, to the Tacoma plant of the Pacific Match

Company, hereinafter called the match company, and in more recent years has hauled paperboard, pulpboard, boxes, potash, zinc oxide, aluminum sulphate and returnable skids, to plants of the Container Corporation of America, hereinafter called the container corporation.

By complaint filed October 6, 1950, as amended, Henry Johnson, doing business as Johnson Truck Service, and others, all being motor common carriers of property, alleged that plaintiff, Pasco Salvino, of Seattle, was and had been engaged in the transportation of certain commodities in interstate commerce between points in Oregon and Washington beyond the scope of his present contract carrier authority and thereby was in violation of the provisions of the Interstate Commerce Act.

The complaint was referred to Joint Board No. 45 for hearing and recommendation of an appropriate order thereon. Hearing was held on October 2, 1951 at Portland, Oregon, before the Joint Board, which was assisted by the Examiner, who was present during the entire proceeding. The Joint Board waived its right to participate in the proceeding and the matter was referred to the Examiner for report and recommended order. At the hearing the complainants contended that plaintiff's authority to transport "factory supplies" included only those items used in the manufacturing process at the plants served. On the other hand plaintiff maintained that such authority entitled him to transport all commodities needed or used in the factories served by him, regardless of whether such commodities were to be consumed in the operation or maintenance of the factories, in the shipping of the product, in the operation of their offices, or in the manufacture of outgoing products. During the course of the hearing a stipulation as to the issues or contentions involved was agreed to by the attorneys for the parties and appears in the record. Pages 24 and 25.[1]

The testimony offered by both complainants and plaintiff generally bore out the contentions of the respective parties. However, the Examiner in his report and recommendation rejected the contentions of both parties and held, in substance, that the permit issued to plaintiff so far as it authorized the transportation of "factory supplies" did not authorize transportation of commodities related to or to be used in the manufacture of products of the factories served. Plaintiff excepted to the recommended order and report. Briefs were filed in behalf of both parties and a report and order made by Division 5 of the Commission. It is this order which is now before us for review.

The reasoning and conclusion reached by Division 5 of the Commission differ somewhat from those of the Examiner but, in substance, the recommended order of the Examiner and the order to

1. "Mr. Beasley: The hearing will come to order.

"Exam. Borroughs: The Joint Board understands there is to be a statement of position by Complainant and Defendant, which was outlined during the recess, is that correct?

"Mr. Adams: Well, I've drawn up a stipulation of what the issues are insofar as our different contentions, and Mr. Murray has read it, and I'd like to read it at this time.

"Exam. Borroughs: All right.

"Mr. Adams: It is stipulated by and between the parties that Defendant contends that the words 'factory supplies' contained in Defendant's permit authorizes him to transport all commodities needed or used in the factory including its operation and maintenance, and in the shipping of its finished products, and also includes items necessary to the operation of the office of such factory.

"Complainant resists this contention and contends that factory supplies are limited to the items actually used in the particular process of manufacture of the particular plant.

"I offer such stipulation.

"Mr. Murray: It's agreeable. It's a statement of positions.

"Mr. Beasley: The stipulation will be accepted for the record."

cease and desist are the same. The Commission found that the plaintiff's permit so far as it authorized the transportation of "factory supplies" does not authorize him to transport commodities used as ingredients or parts of the products manufactured at the factories served and that such transportation in interstate or foreign commerce is unauthorized and in violation of the Interstate Commerce Act. The Commission in reaching its conclusions rejected, in effect, all the testimony offered by both the plaintiff and the complainants on the ground that the terms of the permit were not ambiguous. They found the meaning of the term "factory supplies" to be definite and well established and binding on both the holder of the authority and others.

After summarizing briefly the testimony offered by the complainants as well as the plaintiff the Commission justified and reasoned its conclusion in the following language appearing on sheet 6 of its report and order:

"The meaning or scope of the term 'factory supplies' as contained in defendant's permit is not controlled by the interpretations which he, or his shippers, have placed thereupon in his hauling contracts or in his schedules of minimum rates. Nor is the fact that this Commission accepted such contract and schedules for filing without challenge to be viewed as an interpretation. Also, the divergent opinions advanced by witnesses for defendant and complainants are of questionable value in resolving the meaning of the described term inasmuch as they fail to distinguish 'supplies' from 'materials.' Actually, a distinction between these terms has long been recognized by this Commission, both formally and informally. (Citing and quoting from Builders Exp., Inc., Interpretation of Certificate, 51 M.C.C. 103, 106–107, and P. B. Mutrie Motor Transp., Inc. v. Blue Line Exp.,

Inc., 53 M.C.C. 530, 533.) It is clear, therefore, that the terms, 'supplies' and 'materials', have distinct and established meanings. To illustrate, a carrier authorized to transport garment factory supplies, for example, may haul commodities such as boxes, garment hangers, needles, sewing machines, and brooms, which are intended for use in such a factory inasmuch as they are 'supplies' necessary for the operation or maintenance thereof. It may not, however, transport dyes, cloth, thread, and buttons, to a garment factory under the same authority because they are 'materials' which are consumed in, or which form a part of, the finished product. Thus, the term 'supplies' means those things consumed in, or necessary to, the maintenance and operation of a plant, factory, or business, other than the raw materials or ingredients which go into the finished product or structure, whereas 'materials' mean those things used as ingredients or parts of the finished product or structure. * * * Complainants being uncertain themselves as to the meaning of the term 'supplies' and in any event critical of the modifying term 'factory', which they consider to be too broad for reconciliation with defendant's operations on the 'grandfather' date, urge that we go back of defendant's permit and examine the proof in his 'grandfather' clause proceeding to ascertain the true meaning of the term 'factory supplies'; as used in his permit, and the extent of the operation intended to be authorized thereby. Such procedure is permissible, however, only where the certificate or permit is ambiguous. Where, as here, the meaning of its terms is definite and well established, it is binding on both the holder of the authority and others. Since 'supplies' and 'materials' have long been distin-

guished and have well established meanings, it cannot be said that there is any ambiguity or any occasion or justification for going back of defendant's permit."[2]

Plaintiff does not agree with the interpretation as made by the Commission and asks the court to set it aside.

■ We may not substitute our judgment or interpretation for that of the Interstate Commerce Commission unless its judgment is clearly erroneous and arbitrary. The Commission has the authority to construe its own permit. Being familiar with the ordinary usage and common understanding of language used in the transportation industry, the Commission's judgment and interpretation in a field wherein it has expert knowledge and experience should be accepted and deferred to unless clearly erroneous and arbitrary. Converse v. United States, D.C., 109 F.Supp. 807; United Truck Lines, Inc., v. Interstate Commerce Commission, 9 Cir., 189 F.2d 816, certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628; Adirondack Transit Lines, Inc., v. United States, D. C., 59 F.Supp. 503, affirmed 324 U.S. 824, 65 S.Ct. 688, 89 L.Ed. 1393; Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876, affirmed 345 U.S. 980, 73 S.Ct. 1138, 97 L. Ed. 1394; Wilson v. United States, D. C., 114 F.Supp. 814.

If our review were restricted to passing upon the definition the Commission has accorded or assigned to the word "supplies" or the words "factory supplies" as opposed to the definition of the same words as urged by the plaintiff this case might properly be disposed of under the decisions cited above with the sound conclusion that the interpretation is not clearly erroneous or arbitrary. However, the problem before us, as before the Commission, is not one in lexicology. We are not necessarily concerned with the abstract meaning of the word "supplies"; rather with its meaning as used in the plaintiff's permit.

Plaintiff complains, among other things, that by reason of the Commission's cease and desist order he will suffer great and irreparable damage in that a substantial and indispensable portion of his business will be wholly destroyed, his present two-way haul largely eliminated, and his shippers prevented from using his service as they otherwise would do. He invokes the equitable powers of the court for proper relief.

■ Title 5 U.S.C.A. § 1009(e) defines the scope of our review. It provides inter alia that we shall hold unlawful and set aside agency action found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; or (4) without observance of procedure required by law. As a three-judge court we are vested with and empowered to exercise all the powers of a district court sitting in equity. In re Midland Valley R. Co., D.C., 51 F. Supp. 180.

The Supreme Court in U. S. v. Jones, 336 U.S. 641, at page 671, 69 S.Ct. 787, 93 L.Ed. 938 has declared the equitable powers of the district courts sitting in review of rate orders. Referring to the Jones case, supra, and the Administrative Procedure Act, the Court of Claims in Patterson v. United States, 115 Ct.Cl. 348, at 354, said:

"The provisions of this act would seem to give to the courts, apparently the United States District Courts, to which the act gives jurisdiction in such cases, plenary power to shape the judicial review to fit the case."

■■ Thus we approach this matter on the assumption that the order of the Commission should be sustained unless, considering the whole record and all the facts and circumstances of the instant

---

2. It is noteworthy that the Builders decision was rendered November 22, 1949 and the Mutrie decision was rendered November 7, 1951, while plaintiff's "grandfather" authority was issued September 3, 1937 and revised on April 1, 1938.

case, it falls within some one or more of the restrictions placed upon the Commission by the Administrative Procedure Act, 5 U.S.C.A. §§ 1001–1009, or it deprives plaintiff unlawfully of some right granted him under the Interstate Commerce Act. In so proceeding we must bear in mind the rule expressed in the case of Willapoint Oysters, Inc., v. Ewing, 174 F.2d 676, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, wherein the Court of Appeals for the Ninth Circuit reviewed and set aside an order of the Federal Security Agency. As there stated in 174 F.2d at page 697:

> "Even though a portion of an order, lifted from context, may be supported, we think that it may be extremely arbitrary, capricious and unreasonable when examined in the light and against the background of the order's entire effect."

Plaintiff is a small contract carrier operating two trucks and trailers and one pick-up truck. Over the years he has transported principally for two firms— The Pacific Match Company and the Container Corporation of America. The match company was the firm he served the longest and was his chief customer. He began serving the match company in 1933 or before and obtained his "grandfather" authority in 1937. The authority was granted plaintiff through informal processing by the Commission and while the actual wording of the authority or permit granted plaintiff was changed from time to time all permits issued to him contained the words "factory supplies" or "supplies." In making his application to the Commission for a "grandfather" authority plaintiff filed, among other exhibits, copies of shipping receipts covering shipments handled by him during 1934–35. These covered twenty-one shipments of matches from Tacoma, Washington to Portland or Salem, Oregon; one shipment of glue from Portland to Tacoma; and one shipment of berries from Salem, Oregon to Seattle, Washington. The shipment of glue as shown by the shipping receipt bearing the date of December 13, 1934 (Item 37, Exhibit No. 8) included sacks of glue weighing 19,965 pounds shipped from Peterson in Portland, Oregon to Pacific Match Company in Tacoma, Washington. Plaintiff subsequent to the issuance of his permit has transported for the match company as a back haul (principally from Portland, Oregon to Tacoma, Washington) an insignificant quantity of commodities now classified by the Commission as "supplies" whereas the major haul includes commodities now designated by the Commission as "materials."

The complainants in the original case before the Commission, as indicated in the stipulation above referred to, made no claim that plaintiff's transportation of the commodities for the match company now held to be "materials" was not authorized under the permit. Rather, complainants' witnesses testified in support of such authority and there is no real dispute between any of the witnesses on this point. It even might be surmised that the report of the Examiner caused almost as much surprise to the complainants as it did to the defendant (plaintiff herein).

At the hearing before the Examiner testimony and evidence was offered and admitted presumably on the issue as tendered under the complaint and stipulation as to the contentions. Counsel for plaintiff (defendant at the hearing) took the position at the outset that the terms of the permit were not ambiguous and "that the authority is to be determined by examination of the language or wording of the permit itself * * * and not by things antecedent to the granting of the permit." (Tr. p. 12) This position was taken when the complainants offered in evidence plaintiff's "grandfather" application. The application and other exhibits for the same purpose were admitted and subsequently plaintiff introduced testimony and exhibits relating to the commodities hauled by him before and after the issuance of the "grandfather" authority to establish

the intent in using the term "factory supplies." Plaintiff introduced such evidence for the purpose of meeting the issues and evidence as presented by the complainants. We cannot assume that had the issues been framed as they were subsequently shaped by the report and recommended order of the Examiner and the decision and order of the Commission plaintiff might not have made a more explicit and unmistakable showing as to the hauling of not only glue but also zinc oxide, lampblack, phosphorous, aluminum sulphate and other similar items during the critical period preceding the issuance of the original authority and permit.

The hearing held before the Examiner when considered in the light of the disposition of the issues as made by the report and order of the Commission appears wholly inadequate to support the order.

■ As stated by the Supreme Court in the case of Morgan v. United States, 304 U.S. 1 at page 18, 58 S.Ct. 773, 776, 999, 82 L.Ed. 1129:

"The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them. The right to submit argument implies that opportunity; otherwise the right may be but a barren one. Those who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."

■■ Apt language to fit the situation here presented is likewise found in the case of Ohio Bell Telephone Co. v. Public Utilities Commission of Ohio, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093. The court states in 301 U.S. at page 304, 57 S.Ct. at page 730:

"Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. (Citing cases.) Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the need, when power has been bestowed so freely, that the 'inexorable safeguard' (Citing case) of a fair and open hearing be maintained in its integrity. (Citing cases.) The right to such a hearing is one of 'the rudiments of fair play' (Citing case) assured to every litigant by the Fourteenth Amendment as a minimal requirement."

■ The issue as raised by the complainants and as met by the defendant (plaintiff here) was in ultimate effect rendered moot by virtue of the interpretation made by the Commission. The Commission indicates this in their report and opinion wherein they state that the divergent opinions advanced by witnesses for the defendant and complainants are of questionable value in resolving the meaning of the described term inasmuch as they fail to distinguish "supplies" from "materials." They put aside the testimony adduced at the hearing and construed the terms of the permit in accordance with interpretations adopted as to the words "materials" and "supplies" in decisions reached some twelve years after the issuance of the "grandfather" clause authority to the plaintiff and which decisions are based upon different circumstances and showings. The Commission refused to go back to the plaintiff's permit and examine proof in his "grandfather" clause proceeding to ascertain the true meaning of the term "factory supplies" as used in his permit because, as they assert, such procedure is permissible only where the certificate or permit is ambiguous. The

terms of the permit are not ambiguous in their opinion and therefore they gave no consideration to the proof in the "grandfather" clause proceeding. We cannot agree with the conclusion of the Commission that the terms of the permit are not ambiguous when considered in light of the circumstances under which the permit was issued and bearing in mind that the proof as to what plaintiff's operations were during the critical period may not be adequate due to the course pursued in the hearing and determination of this case by the Commission. However, under what circumstances and to what extent the term may be ambiguous we need not consider as we express no opinion upon the merits in view of our disposition of this matter.

The report and order of the Commission to cease and desist is specific and final. It provides no alternate course. It permits no opportunity for plaintiff to be heard upon the issues as recast by the Commission in its report and order. Briefly, it is our opinion that the order would deprive plaintiff of a substantial part of his existing business without a full and adequate hearing. Again we quote from the language of the Supreme Court in Morgan v. United States, supra, 304 U.S. at page 22, 58 S.Ct. at page 778, emphasizing the basic requirement that a full and fair hearing be accorded parties in controversies before administrative agencies:

> "The maintenance of proper standards on the part of administrative agencies in the performance of their quasi-judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, they must accredit themselves by acting in accordance with the cher-

ished judicial tradition embodying the basic concepts of fair play."

The cease and desist order of the Commission dated November 7, 1952 is set aside and the case is remanded to the Interstate Commerce Commission with instructions that the Commission shall take such action as to it shall seem proper and in accord with this opinion.