**DIXIE HIGHWAY EXPRESS, INC., et al.,**
Plaintiffs,

v.

**UNITED STATES et al.,**
Defendants.

**Civ. A. No. 1273.**

United States District Court
S. D. Mississippi, E. D.

June 23, 1965.

R. J. Reynolds, Jr., R. J. Reynolds, III, Atlanta, Ga., James W. Wrape, Robert E. Joyner, Memphis, Tenn., Guy H. Postell, Monty T. Schumacher, Frank Hall, Atlanta, Ga., Wentworth E. Griffin, Kansas City, Mo., W. D. Benson, Jr., Frank Garrison, Lubbock, Tex., Maurice F. Bishop, John P. Carlton, Birmingham, Ala., Drew L. Carraway, John S. Fessenden, Washington, D. C., James W. Nisbet, Ed White, Chicago, Ill., Bates Block, Allen Post, Atlanta, Ga., William O. Turney, James L. Givan, James J. Williams, Washington, D. C., Phineas Stevens, Jackson, Miss., Dudley W. Conner, Hattiesburg, Miss., for plaintiffs.

Nicholas deB. Katzenbach, Atty. Gen., Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., Robert Ginnane, John H. D. Wigger, Interstate Commerce Commission, Washington, D. C., Rubel L. Philips, Jackson, Miss., M. Ward Bailey, Fort Worth, Tex., for defendants.

Before WISDOM and BELL, Circuit Judges, and COX, District Judge.

WILLIAM HAROLD COX, District Judge.

This is a statutory suit in a three judge court to review a decision and resulting order of the Interstate Commerce Commission entered on an application of the Braswell Motor Freight Lines system for a certificate of public convenience and necessity for the extension of this franchise to haul certain commodities by motor truck from Jackson, Mississippi, into and through Alabama and into Georgia. This application was initially heard and unanimously denied by Joint Board No. 340, composed of a commissioner from the Alabama Public Service Commission and a commissioner from the Georgia Public Service Commission. That joint board heard witnesses and received testimony in this case for fourteen and one-half weeks. Three hundred eleven witnesses appeared before the board and either testified or their testimony was stipulated. Seven hundred thirty exhibits were admitted in evidence. The transcript of the testimony consumed ten thousand nine hundred fifty-five pages. This application was opposed by twenty-nine affected motor carriers and seven railroads. Much time was devoted to the question of the "need" of these numerous shipper witnesses. The Interstate Commerce Commission evinced and expressed much interest in the large number of these witnesses who testified.

The joint board made a detailed finding of facts and conclusions of law on this application and recommended that the application be denied. Its report was accompanied by a proposed order to that effect. The board, among other things, found that: "present service is adequate and that the institution of a new carrier service would greatly impair the services of the carriers." The Interstate Commerce Commission on appeal reversed that decision with one of the three member panel dissenting. It is the final action of the Interstate Commerce Commission on such application that is here for review by this Court. This Court granted the plaintiffs a temporary injunction and the case is now before the Court on its merits for a permanent injunction.

Significantly, two of the opposing carriers (Roadway Express and Mercury Freight) were granted franchises by the commission to haul motor freight in the subject area only five days before the commencement of this hearing on the Braswell application on November 28, 1964. Braswell offered shippers a nine cent cheaper rate. Braswell proposed single line services on a very attractive time schedule which attracted and intensely interested his witnesses.

A fair abridgement of the joint board's report and order follows for a correct understanding of the commission's action.

The board said that it took into consideration the substantial industrial growth both in the area applied for and in the area served by the applicant and its parent company; and that it gave consideration to the additional certificates that have been issued during the last three months of 1960. (page 7)

The board said that the evidence did not show that any of the approximately two hundred eleven public witnesses giving testimony in support of this application stated that service had ever been refused them or that they had been unreasonably delayed in receiving pickups. After analyzing the testimony, it was noted that the supporting witnesses' principal desire was for a *faster service,* and each were supporting the application on the promise of the scheduled service outlined in Appendix A. The joint board said it was not convinced that the applicant could maintain the schedules as proposed in this application (Appendix A)

under regular operating conditions to any substantial degree more than the protestants had always met their holding out transit time. The applicant did not elect to establish through any probative evidence the fact that they are now maintaining these same schedules over their present operation, and for its conclusion the joint board had to rely on data taken from the numerous exhibits filed in this application where Braswell had participated in the movement. Analysis of these shipments revealed that Braswell had not always made the schedules on their present operation, and their service was in line with other carriers operating within the same territory. (page 9)

The report further stated: "The joint board does not agree that the present service is inadequate to meet the reasonable need of the shipping public and is convinced that placing of another through carrier in operation would greatly impair the service of the now existing carrier." (page 11)

The board concluded: "The joint board is of the opinion that the reasonable needs of the shipping public are being complied with by the existing carriers and any additional grant of authority would be detrimental to existing carrier service. (Hancock Trucking, Inc., Extension, Gulf and West Coast—62MCC 513 PP536.)"

"Since Roadway Express, Inc., and Mercury Freight Lines, Inc., have been granted authority after this application was in process of being heard, these carriers have the right to prove they can provide the service needs before any additional grant of new authority is issued. (The Baltimore Motor Coach Company Extension-Charles-Town Race Track— 78 MCC 617; Eldon Miller, Inc., Extension-California—79 MCC 758; Safeway Trails, Inc., Extension-Atlantic City, N. J., Docket No. 84728, Sub 21 [not in printed form] and Wilson v. United States of America, D.C., 114 F.Supp. 814, 815.)"

"The applicant has failed to show a consistent and recurring deficiency in the present service. (Kingsway Transport Extension-Niagara Falls, N. Y., 84 MCC 45.)"

"Also, the applicant failed to show a need for single line service and evidence presented was mere desire or preference. (Oklahoma-Louisiana Motor Freight Co., Extension-Ennis, Texas, 77 MCC 77; and T.S.C. Motor Freight Lines, Extension-New York, 62 MCC 497.)"

No question of financial responsibility of the applicant is presented here for the reason that the applicant merged with its parent company and thereby rectified any criticism of its financial structure after the joint board's decision.

The commission said in its report: "We consider that the board's rulings at the hearing on all substantial issues were correct and that the statements of fact in its report are comprehensive and objective. We find that the board's statements of fact are correct in all material respects, and, except as modified herein, we adopt them as our own by reference. The facts are restated here solely to the extent necessary to an understanding and disposition of the issues."

While it is recognized that there must necessarily be some limitations upon specifics in a finding of facts which influence or control commission action, it would appear irrefragable that in view of the commission's adoption generally of the board's findings, that the commission was obliged to state with more than ordinary specificity any contrary finding of facts available to it in this record to influence its decision. We are not favored with any such findings in this record. The commission further stated: "As a group, protestant motor carriers have been expanding their equipment and facilities and have been improving their services. However, a large percentage of shipments moving between points in the *considered territories* still require three of (sic) four interchanges enroute." There does not appear to be any substantial support in this record for that statement, and counsel for defendants at the bar were unable to point out any to this Court in the record.

While this Court has its statutory limitations upon the scope and range of review in cases of this kind [5 U.S.C.A. § 1009(e)]; still, the Interstate Commerce Commission does not possess any carte blanche authority to disregard positive, undenied, credible testimony and binding judicial opinions and applicable legal precedents in these cases. While a protesting carrier does not have any property right in his franchises in the conventional sense which will deprive the commission of the right and power and sometimes duty to award a competing franchise to another carrier; still the requirements of consistency in the public interest and due process in such respect must be observed. Were it otherwise, the Interstate Commerce Commission would fail of its purpose and duty to the public.

The Interstate Commerce Commission has made no basic finding as to the inadequacy of the service presently being rendered by these carriers in the subject area to authorize or justify its legal conclusion in this case. Indeed, it may be well doubted that it could have properly done so with any factual support therefor, particularly as to Roadway Express and Mercury Freight. On the contrary, by the express adoption generally of the joint board's findings and conclusions, which it has not refuted or disavowed or even disparaged, the Interstate Commerce Commission has said that there is no inadequacy of service by the present carriers in the subject area and that to grant a franchise to another carrier therein would be hurtful to the other carriers and the public interest. Yet, in spite of those facts and circumstances, the commission by a two to one vote has reversed the unanimous decision of the joint board and has decided to grant Braswell a franchise to haul certain designated commodities in the area with some restrictions.

After the applicant merged with its parent company, the commission said: "*In the circumstances,* we conclude that applicant is fit and able, financially and otherwise, to conduct the proposed service." No question of financial ability is thus presented for review.

The commission has dealt with this record throughout its report in vague and nebulous terms. Without making any finding of facts from the record to support its conclusions, it has dealt with this problem in its entirety in generalities without favoring us with any facts to be found in this record to support the conclusion which they reached. Although the commission expressly adopted the board's statements of fact as being correct in all material respects; and without making any specific findings by the commission which are supported by this record, the commission has nevertheless proceeded to disapprove the sound conclusions based on such findings to the contrary. The promises, expressed hopes and the assurances of the applicant were obviously treated by the commission as evidence without factual support of its ability to provide such services, if, indeed, any actual need existed therefor. The franchises to Mercury and Roadway were so new that "few of the shipper witnesses had any experience in the use of these new services." The commission's reaction is not noted or indicated to the fact that "one shipper voiced a reasonable complaint which concerned services received from Mercury." The commission's report recites: "However, a large percentage of shipments moving between points in the considered territories still require three of (sic) four interchanges enroute." Nothing is contained in this voluminous record which has been cited by counsel to support that observation or reasoning. The commission said that other carriers serving "these territories" have continued to realize substantial increases in traffic, even subsequent to the granting of the Mercury and Roadway applications; hence, the commission concluded that a granting of this application substantially as sought "should not" adversely affect protestants to a material extent. Further, without factual support cited from this record and in the face of its adoption of the board's finding to the contrary, the

commission said: "Moreover, the preservation of the status quo should not, in this instance, outweigh the overwhelming evidence of 'shipper need' for improvements in the service now available." Commissioner Bush dissented on the ground that he was not convinced that a need had been shown for the proposed service, "especially in view of the recently instituted operations of Roadway and Mercury, etc."

The Interstate Commerce Commission in this case had the right and duty to review this record and to make its own determination thereon. It had a positive duty to these litigants and the public to make its findings and conclusions from the record with sufficient clarity and specificity to allow for an intelligent grasp and understanding of the basic facts in the record relied upon by the commission to support its conclusions and ultimate decision. Such findings and conclusions by the Interstate Commerce Commission are lacking in this case and it is apparent to this Court that its conclusions are without substantial support in this record; otherwise, it would have been more clearly and specifically stated in its record. Under the circumstances in this case the factual basis and reasoning of the Interstate Commerce Commission thereon to reach its decision in this case is left for us to conjecture and guess. It must be remembered that the commission is an expert administrative body set up by Congress in order to provide adequate economic fact finding and analyses of complicated problems such as the ones here presented. The integrity of this congressional scheme is violated by the commission entering and the courts affirming broad industry-wide orders, the meaning and bases of which are

unclear and the factual and economic analysis of which is inadequate. The Supreme Court on this question said: "We have repeatedly emphasized the need for clarity and completeness in the basic or essential findings on which administrative orders rest."[1]

■■ This Court is interested on this review in determining from this record whether or not the commission's decision is supported by substantial evidence in this record; and whether or not its decision is responsive to uncontroverted, credible evidence in this record; or is legally arbitrary and capricious by reason of failing to respond to and act upon any such credible and undisputed evidence and testimony.[2] Such findings and conclusions must be based upon the record and upon fair inferences and must support and justify the subsidiary findings and conclusions of the commission based thereon.

The commission in this case was much impressed with the expressed "needs" of these three hundred eleven shipper witnesses. It was doubtless influenced if not controlled by such consideration without making any finding or determination as to whether such needs were related to sales needs of these vendors or their transportation needs. Yet, before the commission may give way to a shipper's needs it must first determine that those needs pertain to a transportation service.[3]

In this case there appears no substantial evidence to support the conclusion that any actual transportation need or necessity existed for the granting of this franchise. A mere scintilla of evidence plus an inference therefrom would not arise to the dignity of substantial evidence to support its decision here.[4]

1. Colorado-Wyoming Gas Company v. Federal Power Commission, 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235.

2. Nashua Motor Express, Inc. v. United States, D.C., 230 F.Supp. 646; Mayfield Sons Trucking Company v. United States, D.C., 234 F.Supp. 655; 5 U.S.C.A. § 1009(e).

3. Baggett Transportation Co., et al. v. United States, et al., 231 F.Supp. 905, 908.

4. Consolidated Edison Co. of New York v. National Labor Relations Board, 305 U.S. 197; 59 S.Ct. 206, 83 L.Ed. 126; National Labor Relations Board v. Columbia Enameling and Stamping Company, 306 U.S. 292; 59 S.Ct. 501, 83 L.Ed. 660; Universal Camera Corporation v. Na-

This report of the commission stands alone without record support of any idea that there were any inadequacies in existing service. The adopted finding of the commission is to the contrary. There is no evidence in this record that existing carriers were afforded an opportunity to rectify any such deficiencies in their services. Yet, on April 23, 1965, the Interstate Commerce Commission said: "We have repeatedly stated that existing carriers normally should be accorded an opportunity to transport all of the traffic they can handle in an adequate and efficient manner without the added competition of a new operation."[5] The doctrine of stare decisis does not apply to decisions of administrative bodies, but consistency of administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily.[6] A healthy and efficient operation is extremely important to the public interest. One of the basic ingredients in the determnation of public necessity is the inadequacy of existing service.[7] The national transportation policy is intended to promote economical and efficient service and foster wholesome and basically sound economical conditions in transportation among the carriers.

It is the view of this Court without prolonging this opinion that the report and order of the Interstate Commerce Commission thereon is not supported by the record and does not measure up to indicated standards and that such report and order should be vacated and annulled. The Interstate Commerce Commission should be enjoined from issuing a permit or franchise to the applicant for the reasons stated; and this proceeding should be remanded to the Interstate Commerce Commission for its reexamination and study and further action thereon not inconsistent with the opinion of the Court herein. The temporary injunction heretofore issued in this case will be made permanent. The bond for the temporary injunction will be discharged. A judgment accordingly may be presented for entry.

tional Labor Relations Board, 340 U.S. 474; 71 S.Ct. 456, 95 L.Ed. 456.

5. United Van Lines, Inc., Extension-Alaska, No. MC 67234.

6. National Labor Relations Board v. Mall Tool Co., (7CA) 119 F.2d 700.

7. Hudson Transit Lines v. United States, 82 F.Supp. 153, affirmed 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485.