**MORGAN DRIVE–AWAY, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant,**

and

**Interstate Commerce Commission**

and

**Transit Homes, Inc., Intervening**
**Defendants.**

**Civ. No. 3828.**

United States District Court
N. D. Indiana,
South Bend Division.

May 3, 1967.

D. Russell Bontrager, Elkhart, Ind., James E. Lesh, Indianapolis, Ind., for plaintiff Morgan.

Robert W. Ginnane, Gen. Counsel, Nahum Litt, I.C.C., Washington, D. C., Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Dept. of Justice, Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., for intervening defendant I.C.C.

Alki E. Scopelitis, Donald W. Smith, Indianapolis, Ind., for intervening defendant Transit Homes, Clyde E. Herring, Washington, D. C., of counsel.

Before SWYGERT, Circuit Judge, and GRANT and ESCHBACH, District Judges.

GRANT, District Judge.

This is a proceeding under 28 U.S.C. § 2321 et seq. to set aside the order of the Interstate Commerce Commission directing the issuance of a certificate of public convenience and necessity to Transit Homes, Inc. (Transit). The plaintiff, Morgan Drive-Away, Inc. (Morgan), is a common carrier by motor vehicle engaged in the transportation of mobile homes from points in Pennsylvania to various locations in the eastern half of the United States. Morgan held the existing certificate of authority at the time that Transit made application to the Commission for a like permit. The initial decision was made by a Hearing Examiner who denied the application in his recommended report. The Review Board agreed and affirmed the denial. The Commission was moved to reconsider, however, and by a vote of 2–1 approved the application. Morgan seeks review of this determination. We find no error in the action of the Commission.

This case does not present us with the oft-recurring problem of the substantiality of the evidence required to support the Commission's ultimate findings and conclusions. See, e. g., Freight Forwarders Institute v. United States, 263 F.Supp. 460 (S.D.N.Y.1967); Key v. United States, 263 F.Supp. 544 (S.D. Ind.1966); Arkansas Grain Corporation v. United States, 263 F.Supp. 480 (E.D. Ark.1966); Illinois Central Railroad Company v. United States, 263 F.Supp. 421 (N.D.Ill.1966), aff'd 385 U.S. 457,

87 S.Ct. 612, 17 L.Ed.2d 509 (1967). Morgan has expressly disclaimed any intention to dispute this point; rather, our attention is directed to what plaintiff challenges as procedural irregularities: (1) the plaintiff contends the Commission's ultimate findings are purportedly based upon the facts as found by the Hearing Examiner and, if so, those facts can provide no rational basis for the Commission's contrary result; (2) the Commission allegedly erred when it failed to render a specific finding as to present inadequacy of Morgan's carrier service.

Morgan's first argument requires some background. On May 11, 1965 the Hearing Examiner issued his recommended report, accompanied by his findings of fact and conclusions thereon, denying Transit's application. The Review Board, in agreement with the Examiner, adopted as their own the full report. On December 30, 1965 the Commission reversed the Board and Examiner. Prior to a discussion of the case, the Commission stated:

"The evidence, the examiner's recommendation, the decision and order of the Review Board, and the pleadings have been considered. We find the statement of facts in the examiner's report to be correct in all material respects; and we adopt it as our own. His statement is set forth in the appendix hereto with certain typographical corrections."

Appended to the decision were eight pages entitled "Examiner's Statement of Facts." This statement was a necessary explication of the factual basis upon which the Examiner concluded that the application ought to be denied. Morgan argues that no other conclusion can reasonably be derived therefrom, and therefore, since the Commission unqualifiedly adopted that statement, contends that it cannot rationally reach a decision contrary to the Examiner's.

The Commission, of course, is not bound by the Examiner's decision; on the contrary, it is required to reach its

own conclusions based upon the evidence. Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166 (1933). Section 8(a) of the Administrative Procedure Act (5 U.S.C. § 1007(a)), which is applicable to Interstate Commerce Commission proceedings,[1] gives the Commission broad powers in reviewing recommended decisions:

> " * * * On appeal from or review of the initial decisions of such officers the agency shall, except as it may limit the issues upon notice or by rule, have all the powers which it would have in making the initial decision."

Undeniably, a proper exercise of these powers would support the Commission's conclusion here, for the record contains the substantial evidence required on review.[2] In reaching its decision, however, the Commission must conform to certain minimal procedural standards. Returning to Section 8(b) of the Administrative Procedure Act, the following is found:

> "All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

Essentially, the decision must reflect internal consistency. The Supreme Court has recently described this requirement:

> "The courts may not accept appellate counsel's *post hoc* rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself. * * * For the courts to substitute their or counsel's discretion for that of the Commission is incompatible with the orderly functioning of the process of judicial review. This is not to deprecate, but to vindicate * * * the administrative process, for the purpose of the rule is to avoid 'propel-[ling] the court into the domain which Congress has set aside exclusively for the administrative agency.'" Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962).[3]

In Dixie Highway Express, Inc. v. United States, 242 F.Supp. 1016 (S.D.Miss. 1965), upon which Morgan strongly relies, the court sent back to the Commission a case wherein its conclusions did not conform to the fact findings. What is more important, and which distinguishes it from the present case, the record taken as a whole did not support the decision. Morgan points to the following language:

> "While it is recognized that there must necessarily be some limitations upon specifics in a finding of facts which influence or control commission

---

1. Chicago & Eastern Illinois R. Co. v. United States, 107 F.Supp. 118 (D.C.Ind. 1952), aff'd 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707.

2. For a recent restatement of that standard, see Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

3. In the first Chenery case, Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1942) the Court said: "The grounds upon which an administrative order must be judged are those upon which the record discloses that its ac-

tion was based." 318 U.S. at 87, 63 S.Ct. at 459. The agency thereupon reissued its decision fully documented with appropriate reasoning and the Court affirmed, saying: "The facts being undisputed, we are free to disturb the Commission's conclusion only if it lacks any rational and statutory foundation." 332 U.S. 194, 207, 67 S.Ct. 1575, 1582, 91 L.Ed. 1995 (1946). Perhaps more in point is Morgan v. United States, 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1935): "Findings based on the evidence must embrace the basic facts which are needed to sustain the order."

action, it would appear irrefragable that in view of the commission's adoption generally of the board's findings, that the commission was obliged to state with more than ordinary specificity any contrary finding of facts available to it in this record to influence its decision. We are not favored with any such findings in this record." 242 F.Supp. 1018.

But the court went on to consider the conclusions which it felt to be objectionable and said:

"There does not appear to be any substantial support in this record for that statement, and counsel for defendants at the bar were unable to point out any to this Court in the record." 242 F.Supp. at 1018.

Therefore, the *Dixie Highway* case does not parallel our own where, as we have already said, the record as a whole supports the Commission's decision. But it does present the very limited question concerning the adequacy of the Commission's findings of fact in relation to its ultimate conclusion. That question is widely recognized as an important one:

"The practical reasons for requiring administrative findings are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction."[4]

With this is mind, we review the Commission's decision, including the adopted "Examiner's Statement of Facts", and find that the findings, conclusions and reasons therefor are unimpeachable and entirely consistent.

The "Examiner's Statement of Facts" as adopted by the Commission is in reality a summary of all of the evidence presented to the Hearing Examiner, both favorable and unfavorable to Morgan. Recited are the complaints of twelve mobile home manufacturers regarding the inadequacy of the service then supplied exclusively by Morgan. Included is evidence of unfulfilled requests for service, delivery delays, and failure to cope with the load during the March-September peak period. There is also a summary of the rebutting evidence put forth by Morgan tending to explain away the alleged inadequacies. Additionally there is reference to testimony of the Pennsylvania Mobile Home Association in support of Transit indicating that the industry output in Pennsylvania was expected to double in the forthcoming year, requiring additional truckaway service. In the same vein, the assistant director of the Bureau of Industrial Development of the Pennsylvania Department of Commerce expressed his opinion that there was a need for additional motor carrier service to serve the mobile home industry in Pennsylvania.

There is no question but that the Commission's conclusions are entirely consistent with these facts. In discussing the evidence the Commission recognized that Morgan had shown that they were adequately handling much of the existing traffic, but went on:

"At the same time the evidence is convincing, due to the substantial increase in production of this traffic and the number of shippers that have been required to rely on private carriage in the past, that a need for additional motor carrier service has been established. Additionally, it appears that applicant's service will be used, at least to a great extent, to help out during peak periods, and to transport a portion of the annual increase in production as well as numerous units now being moved in private carriage. In view of this and considering the large volume of traffic available for movement in the considered area, we are of

---

4. 2 Davis, Administrative Law Treatise § 16.05 (1958).

the opinion that the granting of additional authority is warranted and that such grant should have no material adverse effect upon protestants."

The Commission, in effect, placed greater weight on the growth factors affecting future needs than did the Examiner. The basic facts necessary to this determination appear not only in the trial record, but in the adopted "Statement of Facts" as well. This is all that is required in meeting the procedural obligation. See State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L Ed. 291 (1930). The importance of these procedures lies in the equitable principle that all parties concerned be apprised of the basis of the Commission's decision and order by reviewing its published work product. See Key v. United States, 263 F.Supp. 544, 548 (S.D.Ind.1966). A fair reading of the Commission's entire decision shows that this has been done.

 Morgan's second argument is that the Commission was in error when it failed to render a specific finding that Morgan's existing service was inadequate. This is not required. The Commission is authorized to issue a certificate under the following circumstances:

" * * * if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public con venience and necessity * * * " 49 U.S.C. § 307(a). (Emphasis supplied.)

Present and future requirements are stated in the disjunctive, so that a finding of either will support an application. Quite reasonably there is no requirement that both present and future inadequacies exist. Consequently, the courts have regularly refused to demand that the Commission specifically find an inade-

quacy of existing service. See Petroleum Carrier Corporation v. United States, 258 F.Supp. 611 (M.D.Fla.1966) and cases therein cited.

 Viewing the record in its entirety, we cannot say that the Commission acted improperly. Our relationship to agency action has been clearly defined:

"When the record as a whole will support equivocal but reasonable determinations, neither the district court nor this court may make a redetermination to comport with our own views of the case. If we were to do so, we would be assuming the role of a super-agency rather than providing a check against unreasonable and arbitrary results." Moon v. Celebrezze, 340 F.2d 926, 930 (7th Cir. 1965).

Since we find no arbitrary action, we must support the Commission's decision.

Accordingly, it is ordered that the plaintiff's complaint for injunctive relief be, and the same hereby is, denied.

So ordered.