**W. T. MAYFIELD SONS TRUCKING CO., a corporation, Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, et al., Defendants.**

Civ. A. No. 7816.

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 16, 1962.

**620**

R. J. Reynolds, Jr., Atlanta, Ga., H. Charles Ephraim, Washington, D. C., for plaintiff.

John Wigger, Dept. of Justice, Washington, D. C., Betty Jo Christian, I. C. C., Washington, D. C., for defendants.

Crimm & Postell, Atlanta, Ga., for Superior Trucking Co., Inc.

Ernie Adamson, Middleburg, Va., for Heavy Specialized Carriers Conference.

Before BELL, Circuit Judge, and HOOPER and MORGAN, District Judges.

MORGAN, District Judge.

This case involves an application for injunction wherein plaintiff, a common carrier by motor vehicles, operating in interstate commerce, under certificates of public convenience and necessity issued by the Interstate Commerce Commission (herein called the Commission) seeks a permanent injunction against enforcement by defendants of an order of the Commission dated April 10, 1961. This order was entered in two proceedings which were jointly considered at all material stages before the Commission.

Defendants are the United States of America and the Commission. A common carrier by motor vehicle [1] and a conference of such carriers,[2] who participated in the proceedings before the Commission, have intervened as defendants.

The Interpretations Case concerned a petition filed by plaintiff seeking interpretation or modification of plaintiff's existing certificate, authorizing the transportation of *"contractors' machinery and equipment"*, to permit the continued handling of a generic class of commodities irrespective of consignor or consignee. The Applications Case concerned an application by plaintiff seeking a grant of authority under Section 207 of the Interstate Commerce Act (Title 49 U.S.Code, § 307) the sole effect of which would be to cover movements of *"contractors' machinery and equipment"* from, to, or for use by a person or party other than a private contractor.

The order here involved [3] denies plaintiff all relief sought in both proceedings, and incorporates an interpretation of plaintiff's existing authority (relying upon a Commission interpretation of another carrier's authority in 1954) as covering:

"the transportation of all forms of machinery and equipment which are at the time of movement intended for use by a contractor; that such certificate does not authorize transportation of machines and equipment which are at the time of movement intended for use by persons

1. Superior Trucking Company, Inc.

2. Heavy Specialized Carriers Conference.

3. Appendix "C" to the Complaint.

or parties other than contractor * * *." [4]

The issues here concern the propriety of Interstate Commerce Commission's interpretation, its refusal to modify its interpretation or the authority to conform with the intent of service rendered thereunder, and its refusal to grant authority to enable continuance of such service.

The plaintiff contends: (1) That the limitations imposed by the Commission's order are unreasonable, ambiguous, impractical, and inappropriate; contrary to the language of the certificate and the facts and circumstances surrounding its issuance; unsupported by substantial evidence; improperly revoking the authority; and depriving plaintiff of its property without due process; and, (2) That the failure to grant plaintiff authority to enable continued service unfettered by such limitations is unsupported by substantial evidence and rests upon inappropriate standards.

To place the contentions of the parties in proper perspective, it will be helpful to review the background and the proceedings below.

Prior to 1942, plaintiff's predecessor, W. T. Mayfield, operated as a common carrier by motor vehicle within the State of Georgia, pursuant to authority granted by the Georgia Public Service Commission. In August, 1942, plaintiff's predecessor sought, and thereafter was granted, temporary authority to provide interstate service, which, being extended and expanded by said Commission, ran from October, 1942, including issuance to Mr. Mayfield of the certificate here involved. [5]

The first of these so-called "temporary authorities" was granted in Docket Number MC–103926 (Sub-No. 3TA) effective October 29, 1942. Insofar as pertinent, service was authorized, based upon affidavits of Mayfield and Captain J. H. Tiller, Jr., of the United States Army, respecting a need for service between military projects and establishments. The authority granted, insofar as pertinent, covered the transportation of: *"contractors' machinery and equipment* * * *."*

In January of 1943, the territorial scope of the temporary authority granted in Docket Number MC–103926 (Sub-No. 3TA) was expanded through the grant of a new temporary authority in Docket Number MC–103926 (Sub-No. 6TA) which was thereafter extended until issuance of the certificated authority here involved. [6] The temporary authority granted in Docket Number MC–103926 (Sub-No. 6TA) covered, insofar as pertinent:

> " *'Contractors' machinery and equipment'*, including tractors, scrapers, shovels, paving units, dirt moving or dirt hauling machinery, parts for any or all, self-propelled or other than self-propelled units, in straight or mixed shipments, any quantity * * *."

This temporary authority was granted based upon affidavits of applicant Mayfield and Major J. H. Tiller, Jr., of the United States Army, respecting the need for service between military projects and establishments.

At the conclusion of World War II (on April 5, 1946) Mr. Mayfield filed an application under Section 207 of the Interstate Commerce Act (Title 49 U.S.Code, § 307) seeking a certificate reading in the same terms as the temporary authority issued in Docket Number MC–

---

4. Quote from printed Commission Report attached as Appendix "B" to the Complaint, 83 M.C.C. 694, at 698.

5. The "temporary authorities" were granted and extended pursuant to Section 210a(a) of the Interstate Commerce Act (title 49 U.S.Code, § 310a(a)) and Section 102, Second War Powers Act, 1942 (56 Stat. 177).

6. The temporary authority granted in Docket No. MC–103926 (Sub-No. 3TA) was cancelled upon issuance of the temporary authority in Docket No. MC–103926 (Sub-No. 6TA).

103926 (Sub-No. 6TA).[7] This application was assigned Docket Number MC–103926 (Sub-No. 8). Public hearing was held before Examiner Richard Yardley in Atlanta, Georgia, on July 22, 1946. The asserted purpose of the application was to enable continuance of service rendered under temporary authority. No one appeared in opposition. Aside from the testimony exhibits sponsored by Mr. Mayfield and members of his family, the application was supported, insofar as pertinent, by a distributor of *"contractors' machinery and equipment"*, a highway construction contractor, a road and levee construction contractor, and an excavating and paving contractor. By Report and Recommended Order, served August 7, 1946, Examiner Yardley recommended a grant of authority, insofar as pertinent, covering *"contractors' machinery and equipment * * *."* In the absence of exceptions, the Examiner's Report and Recommended Order were adopted by the Commission, effective August 27, 1946. The certificate here involved was issued to Mr. Mayfield on October 25, 1946. Upon the death of Mr. Mayfield in April, 1950, plaintiff was incorporated by his heirs, and the motor carrier operations were transferred to plaintiff and the certificate here involved was re-issued by the Commission to plaintiff on December 29, 1952.

From 1942 on, plaintiff and its predecessor continuously handled *"contrac-*

*tors' machinery and equipment"* to, from, and between all manner of persons without concern as to the business of the intended user. The machinery and equipment handled were all of the heavy type used in excavation, construction, maintenance and repair of roads, bridges, dams and other structures.[8]

During 1959, questions were raised concerning plaintiff's handling of a shipment of shovels, motor cranes, bulldozers, and other paving equipment for the Federal Government from one army installation in Alabama to another army installation in Georgia. Plaintiff's right was questioned to transport a shipment not earmarked for use by a contractor.

Following conferences with representatives of the Department of Defense and the Interstate Commerce Commission, plaintiff, in June, 1959, instituted both the Interpretations Case and the Application Case. The Interpretations Case and the Application Case were assigned by the Commission for hearing jointly, and were heard before Examiner Allen W. Hagerty on December 9, 1959, in Atlanta, Georgia, and on March 21, 1960, in Washington, D. C. Plaintiff's president and its auditor offered testimony in support of plaintiff, together with a motor carrier participating in interline movements with plaintiff, the South Carolina Highway Department; McCormick County, South Carolina Soil Conservation District; two distributors of *"contractors' machinery and equip-*

---

7. Including authority to transport *concrete pipe* not pertinent hereto.

8. Report of Examiner Hagerty herein notes (Appendix "A" to the Complaint, Sheet 3):

   "In the course of its transportation, applicant has transported many and varied contractors' articles, such as tractors, wheel type and track type, with or without bulldozer blades, motor buckets and brooms; power shovels, cranes, draglines, clamshells, pile drivers; scrapers, earth hauling and tow and self-propelled types; graders, motor elevator, and two type graders; concrete plant, including sand bins, cement silos, gravel bins, conveyors, scales and scale houses; asphalt plants, including dryer, sand bins, rock bins, storage tanks, power units, conveyors, smoke stacks and scales; rock crusher plants, including crushers, screeners, conveyors, bins, scales, air compressors, drills and hammers; pile driver spreads, including cranes, boilers, leeds, air compressors, hammers, mandrels, caissons and matts; and other contractors' machinery and equipment such as pavers, spreaders, material handlers, forms, sheet piling, finishing machiners, office vans, shop vans, and any other type of machinery or equipment that normally go on and off construction jobs. It considers all of the foregoing commodities as within the generic heading 'contractors' machinery and equipment'."

*ment"*; and two witnesses formerly concerned with military transportation and who were familiar with the services rendered by plaintiff and its predecessor on military shipments during various periods.

The conference [9] and eight motor carriers opposed the Application Case, three of whom and one other motor carrier sought and were permitted to intervene in the Interpretations Case. Evidence in opposition at the hearing was submitted by five of the opposing motor carriers.

The Report and Recommended Order of Examiner Hagerty were served on September 20, 1960, and are attached to the Complaint herein. The Examiner, after summarizing the facts, considered the issues respecting the interpretation identical with those decided by the Commission in 1954 in the C & H Transportation Company, Inc., Interpretation of Certificate, 62 M.C.C. 586, referred to as "the C & H Case", and stated on Sheet 8 of his findings:

"While the examiner disagrees with the theory that *intended use* reflects the reasoning behind grants of authority such as here involved when originally made, he has no alternative but to follow Commission precedent although the Commission itself is not bound by the rule of *stare decisis*. The examiner feels that to require a carrier to determine the *intended use* of the commodity before he may accept same for shipment places too much of a burden on our transport agencies. However, the examiner's function here is to determine the facts and not to criticize established principles. There is no question in the instant proceeding that when the authority approved in MC–103926 (Sub-No. 8) was granted, it was as a result of evidence by persons, who were contractors or who shipped to contractors, and under circumstances where there could be no doubt as to the intended use of the commodity at the time of shipment. The original record in the Sub-No. 8 proceeding establishes this beyond question. Following the tenets of the C & H Case, applicant is not prohibited from transporting for parties other than a private contractor when and if it has been established that the intent at the time of shipment is to use the commodities as a contractor would use them. This might even extend to a shipment of a commodity from a manufacturer to a dealer on the theory that at the time of shipment it is intended that the commodity will be used by a contractor although that use might not be imminent. This the examiner believes to be one of the weaknesses of the doctrine of *intended use*. Be that as it may, applicant has not established anything on this record that justifies any departure from the principle expressed in the C & H Case. Accordingly, the applicant's petition should be denied insofar as it seeks modification of its certificate."

The Examiner's Report otherwise found (Sheet 9):

"In Number MC–103926 (Sub-No. 8) the examiner finds that applicant's certificate insofar as it authorizes the transportation of 'contractors' machinery and equipment' authorizes the transportation of all forms of such machinery and equipment which at the time of movement is intended for use by a contractor, and that applicant has failed to justify any modification of its certificate to perform any transportation of 'contractors' machinery and equipment' under any other circumstance.

"In Number MC–103926 (Sub-No. 9) the examiner finds that the present public convenience and necessity do not require the proposed motor carrier operations."

---

9. Heavy Specialized Carriers Conference.

The Recommended Order appended to the Examiner's Report provided for denial of the petition in the Interpretations Case and denial of the application in the Application Case.

Exception was filed to the Examiner's Report, and the conclusions of the examiner were affirmed by Division 1 of the Interstate Commerce Commission in the order issued on April 10, 1961. Division 1 did not, however, adopt the reasoning of the Examiner's Report in its entirety. Plaintiff's petition for reconsideration of the decision of Division 1 of the Interstate Commerce Commission was denied by the entire Commission on October 8, 1961. The Complaint in this court proceeding was filed on February 8, 1962.

This court review action divides itself into two parts: (1) The attack on the Commission's findings and conclusions interpreting the commodity description in plaintiff's Certificate No. MC–103926 (Sub-No. 8), and (2) the attack on the Commission's findings and conclusions denying the plaintiff authority to transport the involved commodities because of the failure to establish that the present or future public convenience and necessity require the proposed operation.

## I.

There is only one broad question before this Court in the Interpretation phase of the case, and that is:

Whether the Commission's conclusion that the commodity description in plaintiff's certificate, *"contractors' machinery and equipment"*, authorizes the transportation of such commodities only when the intended user is a contractor, is rational or is arbitrary or clearly erroneous.

■ It is well established that the construction of the scope of transportation permitted by a certificate is for the Commission and will not be overturned by the Courts unless arbitrary or clearly erroneous. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 559, 78 S. Ct. 496, 2 L.Ed.2d 484 (1958); Simpson v. United States, 200 F.Supp. 372 (S.D.

Iowa 1961), aff. 369 U.S. 526, 82 S.Ct. 954, 8 L.Ed.2d 83; Malone Freight Lines, Inc. v. United States, 107 F.Supp. 946 (N.D.Ala.1952), aff. 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712.

This Court is bound by the interpretation of the Commission unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law.

Findings of the Commission in the W. T. Mayfield Sons Trucking Company —Interpretation No. MC–103926 (Sub-No. 8) at 84 M.C.C. 698, are as follows:

"We find that petitioner's certificate insofar as it authorizes the transportation of 'contractors' machinery and equipment' authorizes the transportation of all forms of machinery and equipment which are, at the time of movement, intended for use by a contractor; that such certificate does not authorize the transportation of machines and equipment which are, at the time of movement, intended for use by persons or parties other than contractors; that petitioner has failed to justify any modification of the certificate heretofore issued in this proceeding; and that the petition filed June 18, 1959, should be denied."

■ Plaintiff carrier contends that it is uncertain what type of transportation it may perform under the Commission's decision in that it would be limited to handling only machinery and equipment *known* at the time of movement to be *intended* for use by a contractor. (Italics supplied). Plaintiff carrier further contends that it does not normally know at the time a shipment is tendered who is intended to be the user, and there is a chance that some of the shipments are not actually transported to a "contractor" or intended for use by a "contractor", that some are not so intended, and that there is no intent either way with respect to many. Plaintiff contends that it is unreasonable to require it to limit its service to those instances where it

has knowledge at the time of the movement that the actual intended user is a contractor, and that it should be enough that the plaintiff determine that the articles are of a nature normally used by contractors. With this contention of the plaintiff the Court agrees. Attorneys for the Commission contend that the Report of the Commission in the C & H Transportation Company—Interpretation of Certificate, supra case, being cited and referred to in this interpretation, is deemed by it to be controlling, and that the standards set forth there are equally applicable to the instant case, and that it cannot be presumed that the Commission has departed from its previously announced standards merely because it did not repeat those standards verbatim in its Report in the instant case. We feel that the Commission should make its standards certain in the Interpretation Case at hand. That there is even some question concerning the application of the C & H Interpretation Case, supra, is evident from the Recommendation of Examiner Allen W. Hagerty, an expert,[10] when this Examiner interpreted the C & H Case as holding that the applicant here is not prohibited from transporting for parties other than a private contractor when and if it has been established that the intent at the time of the shipment is to use the commodities *as a contractor would use them.* (Italics supplied).

Examiner Hagerty continues his Recommendation on Sheet 8:

"This might even extend to a shipment of a commodity *from a manufacturer to a dealer* (italics supplied) on the theory that at the time of shipment it is intended that the commodity would be used by a contractor, although the use might not be imminent."

That the Report of the Commission needs clarification is also brought to the Court's attention by the brief filed on behalf of the Commission when its counsel, on Pages 13 and 14 of their brief, filed in the case at hand, state:

"In regard to those items which are so predominantly used by contractors as to have virtually no other use, they may be transported without further investigation as to their intended use unless the carrier has actual knowledge that they are intended for use by someone other than a contractor (as, for example, for the use of the armed services). Thus, he may transport such goods from a manufacturer to a dealer without making further investigation. Where the shipment is destined to the armed services, a state highway department, or a branch of the federal government, he is put on notice that those goods, in all probability, are not intended for the use of a contractor and he cannot perform the transportation unless

10. Examiner Hagerty was an expert witness used by the Commission in proceedings in this very Court in which the Commission sought and obtained an injunction against service exceeding the scope of its operating authority in the case of I. C. C. v. Black, N.D.Ga., Civil No. 3325, Atlanta Div. (unreported opinion of Judge Russell, Oct. 30, 1947), aff. 167 F.2d 825 (C.A.5, 1948) cert. den. 335 U.S. 818, 69 S.Ct. 40, 93 L.Ed. 373 (1948). Specifically respecting Examiner Hagerty's testimony and qualifications, the Court of Appeals stated at 167 F.2d 825, at 827:
"The witness, Hagerty, testified that the phrase, 'machinery and machinery parts,' as used in appellant's certificate, had a

special limited meaning in the motor transportation industry, different from the broad, all-inclusive meaning of the words as defined in the dictionary; that as so used the phrase was not considered by the industry to include the transportation of automobile parts. This witness was shown to be an expert in the field of property classifications as related to motor transportation, having gained his knowledge from years of experience as an Examiner of Interstate Commerce Commission. His qualifications were neither attacked nor questioned. We think his testimony was clearly relevant and admissible."

subsequent investigation reveals that, in the particular circumstance, the goods will actually be 'used' by a contractor."

Thus, to the extent that the plaintiff's authority is now construed as permitting service without knowledge or the burden of acquiring knowledge of the actual intended user of items predominantly used by contractors, the position stated in the Commission's brief, as is also the interpretation of Examiner Hagerty in his Recommendation, is a clear departure from the Commission's Report. We thus conclude that the plaintiff's authority to transport *"contractors' machinery and equipment"* is uncertain, indefinite, and vague as to what type of transportation it may perform under the Commission's interpretation of its certificate. In view of the conflict of the expert Examiner's interpretation with the Commission counsel's concession, and both the expert Examiner's and the Commission counsel's varying with the Report of the Commission's Interpretation Case 84 M. C.C. 598, the Report of the Commission in the Interpretations Case should be clarified, and made certain, and definite guide lines should be established that are not ambiguous, in order that the plaintiff may continue its operation without jeopardizing its certificate. This Court does not feel that the Commission properly applied the "intended-user test" to the interpretation of the commodity description *"contractors' machinery and equipment"*.

## II.

In the Application phase of this case, the only question is:

Whether the Commission's denial of the authority sought is supported by substantial evidence, is rational, and in accordance with the law.

The plaintiff argues that this ultimate finding is arbitrary and unsupported by the evidence on the grounds that: (1) It is based upon erroneous standards; and (2) it lacks adequate findings because no consideration was given to the past service rendered by the plaintiff or the efficiency or economy of plaintiff's future service subject to the "intended-user test".

The Courts have uniformly recognized that Congress has delegated to the Commission broad and exclusive discretion in determining public convenience and necessity. Section 207(a) of the Act (49 U.S.C. § 307(a)) authorizes the Commission to issue a certificate upon finding that the applicant is fit, willing, and able to perform, and that the proposed service "is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied". This provision was discussed by the Supreme Court in Interstate Commerce Commission v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 1492, 89 L.Ed. 2051 (1945) as follows:

"Public convenience and necessity is not defined by the statute. The nouns in the phrase possess connotations which have evolved from the half-century experience of government in the regulation of transportation. When Congress in 1935 amended the Interstate Commerce Act by adding the Motor Carrier Act, it chose the same words to state the condition for new motor lines which had been employed for similar purposes for railroads in the same act since the Transportation Act of 1920, § 402(18) and (20), 41 Stat. 477. Such use indicated a continuation of the administrative and judicial interpretation of the language. Cf. Case v. Los Angeles Lumber Company, 308 U.S. 106, 115 [60 S.Ct. 1, 84 L.Ed. 110]. The Commission had assumed, as its duty under these earlier subsections, the finding of facts and the exercise of its judgment to determine public convenience and necessity. This Court approved this construction. Chesapeake & Ohio R. Co. v. United States, 283 U.S. 35, 42 [51 S.Ct. 337, 75 L.Ed. 824]. Cf. Gray v. Powell, 314 U.S. 402, 411–12 [62 S.Ct. 326, 86 L.Ed. 301]. The purpose of Congress was to leave to the Commis-

sion authoritatively to decide whether additional motor service would serve public convenience and necessity. Cf. Powell v. United States, 300 U.S. 276 [278], 287 [57 S.Ct. 470, 81 L.Ed. 643]. This, of course, gives administrative discretion to the Commission, cf. McLean Trucking Co. v. United States, 321 U.S. 67, 87–88 [64 S.Ct. 370, 88 L.Ed. 544], to draw its conclusion from the infinite variety of circumstances which may occur in specific instances. * * *"

In a host of cases, the reviewing Courts have uniformly recognized the role of the Commission as arbiter of the public interest, and the limited scope of judicial review of Commission orders granting or denying an application for operating authority. See, e. g., Floyd & Beasley Transfer Co. v. United States, 185 F.Supp. 390, 395–396 (N.D.Ala. 1960); McLean Trucking Company v. United States, 63 F.Supp. 829, 830–831 (N.D.N.C.1945).

■ The Commission acted within the bounds of its administrative discretion in denying the instant application.

The Commission's finding that the plaintiff has failed to establish that the present or future public convenience and necessity require the authority sought is rational, based upon proper standards, and supported by the record.

■ In order to establish that the proposed service is required for the convenience of the public and that it is a public necessity, the plaintiff was required to show that existing facilities are inadequate in that existing authorized carriers are not ready, willing, and able to perform the service. Dance Freight Lines v. United States, 149 F. Supp. 367, at 372 (E.D.Ky.1957); McLean Trucking Co. v. United States, supra.

As the Commission found, the geographical area concerned has available to serve it an ample supply of duly authorized carriers ready, willing, and able to provide the shippers with the type of transportation services here involved.

The record indicates that the testimony of the supporting shippers and others who use the plaintiff's services was given due consideration.

■ The contention of the plaintiff in the Application Case No. MC–103926 (Sub-No. 9) that the Commission is required to consider plaintiff's past unauthorized operations as evidence of public convenience and necessity is without merit. The law is settled that unauthorized operations are not sufficient to establish a public need for a service in the absence of compelling reasons to the contrary. Floyd & Beasley Transfer Co. v. United States, supra; A. B. C. Freight Forwarding Co. v. United States, D.C., 125 F.Supp. 926, aff. 348 U.S. 967, 75 S.Ct. 531, 99 L.Ed. 753.

In effect, plaintiff's complaint is that the Commission abused its discretion and unlawfully administered the statute in not giving controlling weight to evidence of its past operations. As the Supreme Court pointed out in American Trucking Association v. United States, 344 U.S. 298, 312–313, 73 S.Ct. 307, 97 L.Ed. 337 (1953), the Congressional purpose in requiring authorization for all interstate for-hire motor carriers was to preserve the motor carrier transportation system from the overcompetition which has contributed to its instability.

The Supreme Court has repeatedly expressed the view that "the Commission possesses a 'wide range of discretionary authority'" in determining whether the public interest warrants certification of any particular proposed service. Schaffer Transportation Co. v. United States, 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.2d 117 (1957). The factors which the Commission weighed are adequately specified in its Report in No. MC–103926 (Sub-No. 9). The Commission could have properly concluded that no need had been shown for the proposed service which could not be met by the existing authorized carriers.

The order of the Commission in the Interpretations Case (No. MC–103926

(Sub-No. 8)) is set aside and the case is remanded to the Interstate Commerce Commission with instructions that the Commission shall take such action as it shall deem proper and in accord with this Opinion.