**W. T. MAYFIELD SONS TRUCKING COMPANY, a corporation, Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission et al., Defendants.**

Civ. A. No. 8809.

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 12, 1964.

**656**

R. J. Reynolds, Jr., Atlanta, Ga., H. Charles Ephraim, Washington, D. C., for plaintiff.

William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Charles L. Goodson, U. S. Atty., Northern Dist. of Georgia, Atlanta, Ga., for defendant United States.

Robert W. Ginnane, Gen. Counsel, Clarence William Vandegrift, Atty., I.C.C., Washington, D. C., for defendant Interstate Commerce Commission.

Ernie Adamson, Middleburg, Va., for intervening defendant Heavy-Specialized Carriers Conference.

Monty Schumacher, Guy H. Postell. Atlanta, Ga., for intervening defendant Superior Trucking Co.

Before BELL, Circuit Judge, and HOOPER and MORGAN, District Judges.

PER CURIAM.

This is an action brought under Sections 1336, 1398, 2284, and 2321 through 2325 of the Judicial Code, 28 U.S.C. §§ 1336, 1398, 2284, and 2321 through 2325, to enjoin, annul and set aside an order of the Interstate Commerce Commission (hereinafter referred to as the Commission) entered June 12, 1963, and served on June 21, 1963, in Docket No. MC–103926 (Sub–No. 8), W. T. Mayfield Sons Trucking Co.—Interpretation, 92 M.C.C. 167.

The report and order in question was issued after remand by this Court [1] to the Commission with the direction that "the Commission shall take such action as it shall deem proper and in accord with this Opinion". In remanding the matter to the Commission, this Court said, at page 626:

"* * * [t]he Report of the Commission in the Interpretations Case should be clarified, and made certain, and definite guide lines should be established that are not ambiguous, in order that the plaintiff may continue its operation without jeopardizing its certificate."

In its report on further consideration dated June 12, 1963, the Commission considered the opinion of this Court and concluded (92 M.C.C. at 171–172):

"To summarize, petitioner's certificate heretofore issued herein, insofar as it authorizes the transportation of 'contractors' machinery and equipment', authorizes the transportation of all forms of machinery and equipment which are, at the time of movement, without further processing or manufacturing, in a form and condition to be used by contractors, and which, (1) at the time of movement, are known by petitioner to be, or are ascertained by petitioner with reasonable certainty to be, intended for use by a contractor, or (2) are predominantly used by, or which have no, or virtually no, other use than by, contractors, without specific inquiry as to their intended future use, provided petitioner does not have knowledge or some notice of an intended use other than as just stated."

Plaintiff's petition for reconsideration and oral argument was denied by an order dated December 18, 1963.

This action was commenced on March 4, 1964.

---

1. W. T. Mayfield Sons Trucking Co. v. United States et al., 211 F.Supp. 619 (1962).

The first question presented to this Court concerns the question of whether or not the Commission's report on its further consideration of the case establishes definite guide lines delineating the scope of plaintiff's authority as directed by this Court on remand. This Court had previously determined:

" * * * [t]he Report of the Commission in the Interpretations Case should be clarified, and made certain, and definite guide lines should be established that are not ambiguous, * * * *"

The Commission considered at length one important decision which was rendered after the first Mayfield Commission decision and prior to the instant Mayfield Commission decision. The Commission stated:

"Predominant use was again considered in a recent case, Mitchell Bros. Truck Lines–Investigation, 91 M.C.C. 267, decided September 27, 1962. It was noted there that we have permitted carriers with authority governed by the intended future use of the commodities to transport commodities which are predominantly use in, or which have virtually no other use than in, the particular activity for which such authority authorizes transportation, without investigation or inquiry as to the actual use to be made thereof, provided the carrier has no 'knowledge' of a use other than in the particular activity specified. With respect to this exception in cases of 'knowledge' of some other use than that indicated in the certificate, it was recognized that the Commission had not theretofore fully spelled out what was intended. It was pointed out, however, that 'we certainly have not said that a carrier may close its eyes to facts within its possession that would cause a reasonable man to doubt that a commodity is to be used in the particular activity specified in the carrier's authority.' The respondent in the Mitchell Bros. case had contended that specific inquiry as to intended use was not necessary, providing the carrier has no *actual,* as distinct from *constructive,* knowledge that the item to be transported was to be used other than in the particular activity involved and that notice of any type that the commodity was to be so used did not constitute the required actual knowledge. Division 1 held that when the carrier has some notice that the commodities tendered it for shipment may not be used in the activity involved, then it must establish that the commodities at the time of movement are in fact intended for use in that activity before it may transport them. It was stated that at the very least, investigation is required if it is apparent that a shipment is destined to a class or type of consignee not normally dealing in or using the commodities in question."

After the discussion of the various Commission decisions which elaborate the specific bounds of the "intended use test" the Commission concluded, 92 M.C.C. 167 at 170–172:

"In light of the above, we think it clear that Mayfield may transport equipment and machinery predominantly used by contractors when consigned to contractors, or distributors of, or dealers of these commodities, without investigation as to the ultimate use to be made of them, so long as it does not know or have some notice that the items being transported are likely to be used by someone other than a contractor. In the absence of such knowledge or notice, it is justified in assuming that such commodities ultimately will be used by contractors. On the other hand, if such knowledge or notice is present the carrier has the burden of acquiring knowledge of the actual intended user. For example, if the consignee is a branch of the Federal Government, such as the armed forces, or a County or State highway department, Mayfield would not be justified in assuming that a shipment is

intended for use by a contractor, and it could not transport such a shipment unless it established that at the time of movement the shipment actually was intended for the use of a private contractor rather than a Government agency. In this connection, it makes no difference that the consignee will use the machinery or equipment *as* a contractor would use them since the use intended at the time of shipment must be *by* a contractor.[2]

"Mayfield argues that it should be able to transport commodities 'normally', as distinct from 'predominantly', used by contractors without investigation as to the actual intended use. To the extent the words quoted are different, and we think the former to be less constrictive, 'predominantly' has found acceptance in the industry, and has we think, as used in the rule of reasonableness explained herein, proved to make that rule with respect to the requirement of knowledge or investigation, a workable one.

"To summarize, petitioner's certificate heretofore issued herein, insofar as it authorizes the transportation of 'contractors' machinery and equipment', authorizes the transportation of all forms of machinery and equipment which are, at the time of movement, without further processing or manufacturing, in a form and condition to be used by contractors, and which, (1) at the time of movement, are known by petitioner to be, or are ascertained by petitioner with reasonable certainty to be, intended for use by a contractor, or (2) are predominantly used by, or which have no, other use than by contractors, without specific inquiry as to their intended future use, provided petitioner does not have knowledge or some notice of an intended use other than as just stated."

█ It is this Court's opinion that the Commission report has complied with the Court's direction for clarification and that definite guide lines have now been established delineating the scope of Mayfield's authority and that the same is not ambiguous.

The second question with which this Court is now concerned is if the Commission's action now contradicts the background of the particular authority (granted on October 25, 1946) involved and would improperly narrow its scope.

The decision on the previous hearing by this Court summarizes the background of the authority involved and the history of the proceedings up to the time of that order. See W. T. Mayfield Sons Trucking Co. v. United States et al., supra.

As brought out previously, plaintiff was granted "temporary authority" on October 29, 1942, the pertinent parts of which covered transportation of: "contractors' machinery and equipment * * * ".[3] Thereafter, another tempo-

---

2. For example in No. MC–114211 (Sub-No. 16) Donaldson Transfer Co. Extension— Cast Iron Pressure Pipe, 84 M.C.C. 806 (not printed in full), decided February 23, 1961, Division 1 stated as follows: "Wade takes the position that traffic must be consigned to 'contractors' in order to authorize its transportation by [a] carrier authorized to transport 'contractors materials'. We disagree. The test is whether at the time of shipment, the traffic is intended for use by a contractor. The identity of the consignee is not relevant so long as the material is intended, when shipped, for later use by a contractor. Nearly half of the involved traffic will move to privately and municipally owned gas and water companies. While some of the municipalities hire contractors who actually would 'sue' the consignments of pipe, other municipalities have their own crews which lay the involved pipe. Thus some of the involved traffic cannot be moved under the authority now under discussion because it will not be used by contractors." Compare C & H Transp. Co., Inc., Interpretation of Certificate, 62 M.C.C. 586.

3. The "temporary authorities" were granted and extended pursuant to Section 210a (a) of the Interstate Commerce Act (Title 49 U.S.Code, § 310a(a)) and Section 102, Second War Powers Act, 1942 (56 Stat. 177).

rary authority[4] granted expanding the grant of a new temporary authority in Docket Number MC–103926, which was thereafter extended until the issuance of the certificated authority here involved. This temporary authority granted in Docket Number MC–103926 covered, insofar as pertinent:

> " 'Contractors' machinery and equipment', including tractors, scrapers, shovels, paving units, dirt moving or dirt hauling machinery, parts for any or all, self-propelled or other than self-propelled units, in straight or mixed shipments, any quantity * * *."

This temporary authority was granted based upon affidavits of applicant Mayfield and Major J. H. Tiller, Jr., of the United States Army, respecting the need for service between military projects and establishments.

At the conclusion of World War II (on April 5, 1946) Mr. Mayfield filed an application under Section 207 of the Interstate Commerce Act (Title 49 U.S.Code, § 307) seeking a certificate reading in the same terms as the temporary authority issued in Docket Number MC–103926 (Sub–No. 6TA).[5] This application was assigned Docket Number MC–103926 (Sub–No. 8). Public hearing was held before Examiner Richard Yardley in Atlanta, Georgia, on July 22, 1946. The asserted purpose of the application was to enable continuance of service rendered under temporary authority. No one appeared in opposition. Aside from the testimony exhibits sponsored by Mr. Mayfield and members of his family, the application was supported, insofar as pertinent, by a distributor of "contractors' machinery and equipment", a highway construction contractor, a road and levee construction contractor, and an excavating and paving contractor. By Report and Recommended Order, served August 7, 1946, Examiner Yardley recommended a grant of authority, insofar as pertinent, covering "contractors' machinery and equipment * * *". In the absence of exceptions, the Examiner's Report and Recommended Order were adopted by the Commission, effective August 27, 1946. The certificate here involved was issued to Mr. Mayfield on October 25, 1946. Upon the death of Mr. Mayfield in April, 1950, plaintiff was incorporated by his heirs, and the motor carrier operations were transferred to plaintiff and the certificate here involved was re-issued by the Commission to plaintiff on December 29, 1952.

From 1942 on, plaintiff and its predecessor continuously handled "contractors' machinery and equipment" to, from, and between all manner of persons without concern as to the business of the intended user. The machinery and equipment handled were all of the heavy type used in excavation, construction, maintenance and repair of roads, bridges, dams, and other structures.

Since the Commission has now clarified the particular authority granted to Mayfield on October 25, 1946, Mayfield now contends that the interpretation by the Commission would narrow the authority granted to it in October, 1946. The plaintiff asserts that, under the Commission's present interpretation, plaintiff could only handle shipments between military projects and establishments if plaintiff first determined that the actual user at such location is a private contractor.

Under the restrictions now imposed by the order of the Commission, plaintiff Mayfield's authority is now limited in a manner effectively precluding service where (92 M.C.C. 167, at 171) "the consignee is a branch of the Federal Government, such as the armed forces, or a County or State highway department". However, the statement in the Commission's report (92 M.C.C. 167, at 168)

---

4. The temporary authority granted in Docket No. MC–103926 (Sub–No. 3TA) was cancelled upon issuance of the temporary authority in Docket No. MC–103926 (Sub–No. 6TA).

5. Including authority to transport concrete pipe not pertinent hereto.

that its use of the intended-use test has "made no changes in the services actually authorized in such certificate * * *" may or may not be a correct statement.

The authority granted under the two "temporary authorities" and the grant of authority under Section 207 of the Interstate Commerce Act (Title 49 U.S.Code, § 307) replacing the "temporary authorities" on October 25, 1946, all read, insofar as pertinent, "contractors' machinery and equipment * * *". Is any such limitation as now imposed consistent with the "temporary authorities" and the authority granted on October 25, 1946? Does the present interpretation, identical with those decided by the Commission in 1954 in the C & H Transportation Company, 62 M.C.C. 586, limit and narrow plaintiff's authority?

There is a question here as to what authority the plaintiff held under the certificate issued on a temporary basis. Then, also, the issuance of the certificate under Section 207 of the Interstate Commerce Act was almost identical in its wording with the initial grants of authority under Section 210a(a) of the Interstate Commerce Act. It could be true that the authority granted here involved the continuance of service rendered under the prior temporary authorities. The temporary authorities were granted to provide service involving "military projects and establishments". If the evidence were developed, it could show an inconsistency of these facts with this later interpretation the Commission now gives to the plaintiff's authority.

Plaintiff asserts that the Commission's action cannot stand because it indicates no consideration whatever of facts contradicting the restrictions the Commission would now place upon a service continuously performed by plaintiff and its predecessor since 1942. The Commission's failure to consider this evidence is a violation of the provisions of Section 8(b) of the Administrative Procedure Act.[6]

This is the second appearance of this matter before the Court, and this Court is cognizant of Title 5 U.S.C.A. § 1009 (e), defining the scope of our review. Nevertheless, we are required to hold unlawful and set aside agency action found to be (1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; or (4) without observance of procedure required by law.

■ Operating authority issued by the Commission may only be limited, cancelled, or revoked pursuant to the provisions of Section 212(a) of the Interstate Commerce Act (Title 49 U.S.Code, § 312(a)). The Commission may not circumvent the requirements of Section 212(a) under the guise of "interpreting" operating authority issued by it. See Watson Brothers Transportation Company, Inc. v. United States et al., D.C., 132 F.Supp. 905 aff'd per curiam 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810.

■ This Court feels that the Commission should have given consideration to the testimony showing the actual services rendered by Mayfield on and before October 25, 1946, under the certificate; see Bird Trucking Company v. United States, D.C., 159 F.Supp. 717. The failure or refusal to do so deprived plaintiff

6. Section 8(b), Administrative Procedure Act (5 U.S.C. § 1007(b))
"Submittals and Decisions.—Prior to each recommended, initial, or tentative decision, or decision upon agency review of the decision of subordinate officers the parties shall be afforded a reasonable opportunity to submit for the consideration of the officers participating in such decisions (1) proposed findings and conclusions, or (2) exceptions to the decisions or recommended decisions of subordinate officers or to tentative agency decisions, and (3) supporting reasons for such exceptions or proposed findings or conclusions. The record shall show the ruling upon each such finding, conclusion, or exception presented. All decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

of a full and fair hearing. Salvino v. United States et al., D.C., 119 F.Supp. 277.

This Court is without power to perform the functions of the Commission. However, it is our duty to declare that the order dated June 12, 1963, is erroneous and should be set aside for the reason that the Commission gave no consideration to Mayfield's actual operations as of October 25, 1946.

Let this case be remanded to the Interstate Commerce Commission with instructions that the Commission shall take action in accordance with this opinion.