**NORTH AMERICAN VAN LINES, INC., Plaintiff,**

v.

**UNITED STATES of America, Interstate Commerce Commission, et al., Defendants.**

Civ. No. 1875.

United States District Court
N. D. Indiana,
Fort Wayne Division.

Dec. 20, 1967.

Martin A. Weissert, Fort Wayne, Ind., for plaintiff.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., John H. D. Wigger, Attorney, U. S. Department of Justice, John E. Faulk, attorney, Interstate Commerce Commission, Washington, D. C., for defendants U.S.A. and I.C.C.

Alan F. Wohlstetter, Washington, D. C., J. A. Bruggeman, Fort Wayne, Ind., and Knapp, Gill, Hibbert & Stevens, Los Angeles, Cal., of counsel, for intervening defendants Air Van Lines, Inc., Smyth Overseas Van Lines, Inc., and. Alaska Van and Storage Co., Inc.

Before CUMMINGS, Circuit Judge, and GRANT and ESCHBACH, District Judges.

## MEMORANDUM OF OPINION AND JUDGMENT

ESCHBACH, District Judge.

This is an action brought to enjoin, annul, and set aside the orders of the Interstate Commerce Commission, Division 1, entered October 6, 1966 and March 7, 1967 in Docket No. MC–C–5209, North American Van Lines, Inc., Petition for a Declaratory Order. By its orders, the Commission found that North American Van Lines, Inc., (hereinafter North American) was without authority to transport household goods between points in Alaska and that without such authority North American could not move household goods between ports and inland points in Alaska before or following their water movement to or from Seattle or other Pacific Coast ports.

Plaintiff filed this action May 3, 1967. The jurisdiction of this three-judge court was invoked pursuant to 28 U.S.C. §§ 1336, 1398, 2284, and 2325, and 5 U.S.C. § 1009. Air Van Lines, Inc., intervened as a defendant on May 31, 1967, and Smyth Overseas Van Lines, Inc., and Alaska Van & Storage Co., Inc., intervened as defendants on June 8, 1967.

The relief sought by North American must be denied.

Plaintiff North American is engaged in the business of transporting household goods in interstate and foreign commerce by motor vehicle. Since 1953, plaintiff has been transporting household goods to and from Alaska in the so-called "highway" mode, that is, over the Alcan Highway and other highways in the United States and Canada. Household goods have also moved to and from Alaska in the so-called "land-sea-land" mode, whereby the goods are transported overland by motor vehicle between inland United States points and West Coast ports, over the ocean by vessels between West Coast ports and Alaskan ports and overland by motor vehicle from the Alaskan ports to points within Alaska. Since 1953, household goods have moved to and from Alaska in this "land-sea-land" mode under through bills of lading issued by North American and at rates published by North American and filed with the Interstate Commerce Commission. However, the actual carriage of household goods by motor vehicle within Alaska in connection with North American's "land-

sea-land" service has been conducted by Alaska-based agents of North American.

Prior to Alaska's admission to statehood on January 3, 1959, the transportation of household goods in Alaska was not subject to the requirement of a certificate of authority from the Interstate Commerce Commission. When Alaska's statehood became imminent, North American applied to the Interstate Commerce Commission, pursuant to 49 U.S.C. § 310a(a), for temporary authority to engage in Alaskan operations. On December 31, 1958, the Commission issued a certificate granting temporary authority to North American to transport

"Household goods * * * over irregular routes, between points in Alaska, on the one hand, and, on the other, those points in the continental United States which applicant is presently authorized to serve. * * * "

This temporary authority was extended by the Commission to October 1, 1963, when North American's permanent authority went into effect.

North American's application for permanent operating authority was based upon the so-called "grandfather" acts, 49 U.S.C. §§ 306(a) (4) and 306(a) (5), which went into effect July 12, 1960. 49 U.S.C. § 306(a) (4) provides for the issuance of certificates by the Commission, authorizing service between Alaska and the other continental United States, to carriers who had been engaging in such service on and continuously since August 26, 1958, without a requirement of proof that the public convenience and necessity would be served by such a certificate. Similarly, 49 U.S.C. § 306(a) (5) provides for similar "grandfather" certificates authorizing service between points in Alaska to be issued to carriers who had operated between points in Alaska on and continuously since August 26, 1958. Pursuant to these acts, North American applied to the Interstate Commerce Commission for permanent authority to operate between Alaska and points in the other continental United States and also

for permanent authority to operate between points in Alaska.

The Commission disposed of these applications in a consolidated proceeding entitled Mollerup Van Lines Alaska Grandfather Application, 95 M.C.C. 338 (1963). In this proceeding, the Commission granted North American's application for authority to operate its all-highway service between Alaska and the other continental United States. However, the Commission specifically denied North American's application for authority to operate in Alaska in connection with the "land-sea-land" mode. The Commission adopted as its own the findings of the examiner. Thus, at 95 M.C.C. 344, the Commission found:

"It is abundantly clear that none of the several applicants has ever actually conducted any motor operations in Alaska. Their claims to 'grandfather' rights in this category [the 'land-sea-land' mode] are based on the operations of certain Alaska-based motor carriers which they refer to as their agents."

On the basis of this finding, to which North American did not take exception, the Commission held that North American was not entitled to a "grandfather" certificate authorizing carriage of goods between points in Alaska and that without such authority North American could not operate in the "land-sea-land" mode between Alaska and the other continental United States. The certificate issued to North American as a result of this proceeding authorizes service as a common carrier by motor vehicle

"Between points in Alaska, on the one hand, and, on the other, points in the United States, except Alaska and Hawaii." Certificate of Public Convenience and Necessity No. MC 107012 (Sub 30).

It is abundantly clear from the proceeding in which this certificate was issued that the certificate was intended to authorize service between Alaska and the other continental United States only by the highway mode. Authority to

operate in Alaska in connection with the "land-sea-land" mode was expressly denied.

On June 20, 1966, North American petitioned the Interstate Commerce Commission for an order declaring that the certificate which had been granted in the *Mollerup* proceeding authorized service between Alaska and the other continental United States in the "land-sea-land" mode. On October 6, 1966, the Commission, acting without a hearing, entered an order holding that North American's certificate did not authorize Alaskan overland operations in connection with "land-sea-land" service. On December 5, 1966, North American petitioned the Commission for reconsideration of the order of October 6. On March 7, 1967, the Commission denied reconsideration. These two orders of the Commission give rise to the instant case.

North American contends that these orders by the Interstate Commerce Commission amount to a "revocation" of a part of North American's authority within the meaning of 49 U.S.C. § 312 and that the orders are therefore void because the Commission did not follow the procedures set out in that section. North American also contends that if the Commission orders are only an interpretation, they are clearly erroneous and must therefore be set aside. In this connection, North American argues particularly that its certificate unambiguously authorizes "land-sea-land" operations and that even if the certificate is an all-highway certificate, North American may lawfully substitute ocean service for a part of its highway service. The defendants contend that the Commission action was an interpretation of the authority originally granted to North American and that the statutory requirements for a revocation therefore are not applicable. The defendants further contend that the Commission's interpretation of North American's certificate had a rational basis and may not be set aside. The defendants also contend that North American may not lawfully substitute ocean service for land service under its present certificate because that certificate fails to authorize carriage between the Alaskan port of substitution and inland Alaskan points.

■ It is clear that the Interstate Commerce Commission may not revoke a certificate under the guise of "interpretation" and thereby circumvent statutory procedural requirements. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958); W. T. Mayfield Sons Trucking Co. v. United States, 234 F.Supp. 655 (N.D.Ga. 1964); Movers Conference of America v. United States, 205 F.Supp. 82 (S.D.Cal. 1962). But it is equally clear that the orders which North American here seeks to set aside are not a revocation of authority.

North American's contention that the Interstate Commerce Commission action is a revocation stems from its assertion that North American has been continually carrying on "land-sea-land" operations for fourteen years, and the Commission has repeatedly acquiesced in these operations.

The first difficulty with this contention is that it is directly contrary to the Interstate Commerce Commission's finding in *Mollerup Van Lines Alaska Grandfather Application*, supra, that North American has always used agents in the performance of the Alaska overland portion of "land-sea-land" service.

A second difficulty with the contention is that the supposed acts of Commission "acquiescence" upon which North American relies are not, as North American contends, Commission acquiescence in performance by North American *itself* of the Alaska overland portion of "land-sea-land" service.

■■ The Commission has rejected certain applications of other carriers for Alaskan service, allegedly on the basis that North American was satisfactorily performing such service. See, e. g., Dean Van Lines, Inc., Extension—Alaska, 83 M.C.C. 323 (1960). But these alleged acts of "acquiescence" occurred in 1959 and 1960, several years before issuance

of the certificate which North American now claims the Commission is partially revoking. There is no indication that North American's temporary certificate issued under 49 U.S.C. § 310a(a), its so-called "Sub–23TA" certificate, authorized a greater service than the permanent certificate now under consideration. But even if it is assumed arguendo that the Sub–23TA certificate was broader, the granting of a narrower permanent authority would not be a revocation, because 49 U.S.C. § 310a(a) expressly provides that a grant of temporary authority "shall create no presumption that corresponding permanent authority will be granted thereafter." So Commission acquiescence in activities taking place in 1959 and 1960 can in no way support an argument that the Commission is revoking a certificate issued in 1963.

█ Moreover, it is perfectly plausible that the Commission might reject other applications for Alaskan service on the basis that North American, *in cooperation with Alaska-based agents,* was satisfactorily providing such service. Such a rejection of other applicants by the Commission would in no way imply that North American was operating or could operate overland in Alaska *without* the use of such agents. Thus, a finding by the Commission, in the context of other applications for Alaskan service, that North American was performing such service is in no way an acquiescence by the Commission in the performance by North American itself of the Alaska overland portion of "land-sea-land" service.

█ North American also points to applications filed with the Commission for special permission to file substitution provisions in its tariffs in order to render "land-sea-land" service. These applications were granted by a Commission Special Permission Board in June 1964 and April 1965. North American argues that these actions are an "acquiescence" in conduct by North American itself of the Alaska overland portion of "land-sea-land" service, thereby making the Commission's most recent orders a revocation.

The principal difficulty with this contention is that the approval of a joint tariff covering all segments of a shipment is not to be confused with a grant of authority to perform all segments of the shipment. In *Mollerup Van Lines Alaska Grandfather Application,* supra, the same proceeding in which the Commission found that North American was not itself performing Alaskan overland operations in connection with "land-sea-land" service, the Commission also found that

"the household goods handled by these applicants [including North American] are generally covered by a single bill of lading issued on the masthead of a state-side carrier and covering movement from origin to destination at a single-factor rate." 95 M.C.C. at 341, 342.

Thus, the Commission finds no difficulty in the publication of rates to cover the full length of a shipment, part of which must be performed by an Alaskan agent with the requisite operating authority. Approval of a tariff therefore carries no implications whatever about operating authority. Moreover, the Commission has given no indication that approval of tariffs by a Special Permission Board may be relied upon as an interpretation of operating authority; and in the absence of such an indication, no reliance upon such approval would be justified.

█ Finally, North American points to an advisory opinion from the Director of the Bureau of Motor Carriers of the Interstate Commerce Commission to the effect that the continuation of the service described in North American's request would not be "objectionable" while a case then pending before the Interstate Commerce Commission was still under consideration. This opinion was in no way an act of the Commission. The opinion was given in answer to a request by North American for an informal statement of the position of the Bureau of Motor Carriers. Moreover, the opinion is based upon a representation from North American that it had long been conducting the motor carrier operations in question, and this representation was

contrary to the facts as found by the Commission in *Mollerup*. Even if the advisory opinion could be considered as an interpretation by the Commission, which it clearly cannot be, the validity of the opinion ended by its own terms when the decision referred to in that opinion was rendered.

At the time it issued North American's certificate No. MC 107012 (Sub 30), the Interstate Commerce Commission held that North American could not transport household goods between points in Alaska in connection with "land-sea-land" service. The Commission has done nothing since that time which would change that holding. The Commission's two most recent orders therefore do not constitute a revocation of North American's certificate.

[redacted] North American next contends that this interpretation of its certificate must be set aside as clearly erroneous. This court is not free to interpret an Interstate Commerce Commission certificate for itself. The court must accept the Commission's interpretation unless that interpretation is found to be clearly erroneous. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958). This court holds that the Commission's interpretation of North American's certificate is entirely reasonable and consistent with the Congressional purpose in enacting 49 U.S.C. §§ 306(a) (4) and 306(a) (5).

North American claims that the certificate is clear on its face and that the court therefore may not consider the record from which the certificate originated. If the certificate is viewed solely on its face, it tends, if anything, to support the position of the defendants. The certificate authorizes, in pertinent part,

> "transportation in interstate or foreign commerce as a common carrier by motor vehicle * * * between points in Alaska, on the one hand, and, on the other, points in the United States, except Alaska and Hawaii."

The term "common carrier by motor vehicle" is unambiguously defined in 49 U.S.C. §§ 303(a) (13) and 303(a) (14) as a carrier by means of the highway.

[redacted] North American's certificate is based upon a so-called "grandfather" act; that is, whatever authority North American possesses must come by reason of operations conducted on and continuously since the date designated by Congress in the Act. For this reason, North American's certificate cannot be interpreted apart from the historical background which gives rise to it. If the certificate is viewed in this fashion, the interpretation of the Commission is amply justified and reasonable. The Commission has made a distinction between the "highway" mode and the "land-sea-land" mode and has held that Alaskan overland operations in the "land-sea-land" mode cannot be conducted without authority to serve between points in Alaska. This distinction is based upon a finding that prior to the Congressional grandfather date, North American conducted Alaskan overland operations in connection with the "highway" mode, but *not* between points in Alaska in connection with the "land-sea-land" mode. The Congressional purpose in enacting 49 U.S.C. §§ 306(a) (4) and 306(a) (5) was obviously to base operating authority in Alaska, at least to begin with, upon the practices of carriers in Alaska prior to Alaska's admission to the Union. The orders of the Commission carry out the Congressional purpose by giving effect to North American's own practice as the Commission has found it. The orders of the Commission are therefore proper.

[redacted] North American contends that even if its certificate authorizes only an all-highway service, the Commission has clearly erred in holding that North American may not substitute water for highway service over a portion of the route. North American cites as authority for this proposition American Trucking Associations v. Atchison, Topeka, and Santa Fe Railway Co., 387 U.S. 397, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967). In this case the Supreme Court was considering the validity of certain Interstate Commerce Commission rules authorizing

motor vehicle carriers to use railroad "piggyback" service without concurrence of the railroad. In this context, the Supreme Court said that the Commission may lawfully *authorize* a common carrier by motor vehicle to use means of transport other than road. Nothing in the Court's opinion suggests that motor vehicle carriers may substitute water service *without* Interstate Commerce Commission authority.

The court finds that the order of the Interstate Commerce Commission of October 6, 1966, which interprets North American's certificate No. MC 107012 (Sub 30) as not authorizing Alaskan overland operations in connection with the "land-sea-land" mode and the Commission's order of March 7, 1967, denying reconsideration, are lawful in all respects. The relief sought by North American in its complaint must therefore be denied. This memorandum contains the court's findings of fact and conclusions of law as provided in Rule 52(a) of the Federal Rules of Civil Procedure.

Accordingly, plaintiff's complaint filed herein is dismissed.