**COLLETTE TRAVEL SERVICE, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission,**
**Defendants.**

**Civ. A. No. 3535.**

United States District Court
D. Rhode Island.

Nov. 22, 1966.

Frank C. Cambio, Providence, R. I., Thomas W. Murrett, Hartford, Conn., for plaintiff.

Frederick W. Faerber, Jr., U. S. Atty., Providence, R. I., Raymond M. Zimmet, I. C. C., Washington, D. C., for defendants.

Edward F. Hindle, Providence, R. I., for intervenor, Automobile Club of R. I.

Before ALDRICH and McENTEE, Circuit Judges, and DAY, District Judge.

ALDRICH, Circuit Judge.

The Automobile Club of Rhode Island, intervenor in the present proceedings, applied to the Interstate Commerce Commission, pursuant to section 211(a) of the Interstate Commerce Act, 49 U.S.C. § 311(a), for a license to operate as a travel broker at Cranston, Providence, and Newport, Rhode Island, and Fall River, Massachusetts. Specifically, it sought authority to arrange charter and special-party motor transportation in round trips beginning and ending in those four cities and extending to all points in the United States. The application was opposed by three brokers presently authorized to operate in Rhode Island and Massachusetts. After hearings and the appropriate further steps in the administrative process, the Commission granted the application in part. Intervenor was given authority to conduct its brokerage operations only at Cranston, Rhode Island, a city where none of the protesting brokers is authorized to conduct operations, and to begin its tours only in Cranston and Providence.

Collette Travel Service, Inc., one of the protesting brokers and the petitioner for review here, is licensed to act as a broker in Providence (which adjoins Cranston) and Pawtucket, Rhode Island (which adjoins Providence on the other side). Petitioner asserts that the Commission had before it no evidence that the Providence-Pawtucket-Cranston metropolitan area needs, or can support, an additional broker, and hence that the Commission has failed in its duty to in-

sure that the grant of a license would be "consistent with the public interest." [1]

■■ This crucial statutory phrase has apparently never been judicially interpreted in a brokerage license case, which leads us to make this opinion more extensive than the facts involved would otherwise deserve. Petitioner properly concedes that less is required to meet it than is required to meet the "public convenience and necessity" criterion that governs the issuance of motor carriers' licenses. The purpose of the regulation of motor carriers is, in part, to protect the public from the effects of "ruinous competition." See Auch Interborough Transit Co., Extension—Special Operations in 22 States, 1961, 88 M.C.C. 455, 459. Thus, although a motor carrier is never guaranteed complete freedom from new competition, such licenses are granted only when existing service leaves a well demonstrated, inadequately cared-for demand. In the case of brokers, whose investment in facilities is minimal, far less protection from competition is necessary in the public interest.

This relaxation does not mean, however, that the Commission's only task is to make certain that the applicant is honest and capable. The statutory phrase "consistent with the public interest" adds something to the requirement that the applicant be "fit, willing, and able." The Commission itself has declared that its task is to insure that the service will "fulfill a useful function and be of benefit to carriers or to the public," Paragon Travel Agency, Inc., Ext.—Massachusetts and Rhode Island, 1966, 100 M.C.C. 641, 644; see Weidner Travel Bureau, Inc., Broker Application, 1964, 94 M.C.C. 644; that the new licensee will not merely supply "needless duplicative services", Carla Ticket Service, Inc., Broker Appli-

cation, 1964, 94 M.C.C. 579, 582, and even that the new licensee "must demonstrate that its operations will fulfill a felt public need which is not already being met." White Rose Motor Club Broker Application, 1964, 95 M.C.C. 101, 104.

■ In the present case the Commission found that the proposed service "will meet the needs of the traveling public" and that "the Providence area is clearly able to support additional broker services." We accept the Commission's own statements of the burden that was upon intervenor. At the same time we must reject the contention that the mere assertion by the Commission that a new broker would perform a useful function is an adequate administrative performance. An agency must provide the courts with a record which demonstrates that its conclusions are based upon sufficient foundations. United States v. Chicago, M., St. P. & P. R. R. Co., 1935, 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023. See United States v. United States Smelting, Refining & Mining Co., 1950, 339 U.S. 186 70 S.Ct. 537, 94 L.Ed. 750; M & M Transp. Co. v. United States, D.Mass., 1955, 128 F.Supp. 296. Furthermore, although the principle of stare decisis is not strictly applicable to administrative proceedings, when the Commission appears, as here, either to have failed to employ its usual definition of a statutory term, or to have required less proof than it has consistently required in similar cases, there is an additional doubt that the agency has given the case adequate consideration. See Dixie Highway Express, Inc. v. United States, S.D.Miss., 1965, 242 F.Supp. 1016.

■ In reviewing the record in the present case we do not find a shred of real evidence that the proposed services would be other than duplicative. The

---

1. Section 211(b) of the Act, 49 U.S.C. § 311(b), provides, in part,

 "A brokerage license shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed * * * and that

the proposed service * * * is, or will be consistent with the public interest and the national transportation policy declared in this Act; otherwise such application shall be denied. * * *"

Petitioner does not contend that intervenor is in any way not fit, willing, and able to act as a broker.

evidence presented at the hearing consisted of the testimony of fifteen members of the traveling public from various parts of Rhode Island and Massachusetts. Several of these witnesses testified that they had had previous dealings with the intervenor, and that these were satisfactory. This, of course, was not evidence that the proposed services would not be duplicative. Not a single witness testified that petitioner was unwilling or unable to arrange a tour in which he was interested,[2] and the Joint Board found, as a fact, that petitioner's tours were not conducted at full capacity. No witness, with one possible exception, testified that petitioner's services were inadequate, or that intervenor's would be more desirable, or better. This single exception was a lady who reported displeasure with the accommodations furnished by petitioner on two occasions. Dignifying this testimony, as the Commission did twice in its brief and again on oral argument, by characterizing it as evidence of "customer dissatisfaction" tending to show that petitioner was an inadequate broker, would be laughable[3] if this were not a serious case, taking a great deal of administrative time, and now requiring the consideration of three judges of this court.

The Commission argues that we should ignore the flimsiness of the evidence because the need for brokerage service is inherently difficult to demonstrate by testimonials of public witnesses:

"while it can be expected that supporting shipper witnesses generally will make a regular and relatively constant use of the authority of one who seeks to transport property, because of differences in personal tastes, as well as the fact that tours are arranged at particular times only, a public witness supporting a passenger broker applicant generally will be an infrequent or, at best, an intermittent user of the proposed services so that its testimony might be indefinite or conjectural."

We agree that it seems unlikely that, in the usual case, the testimony of potential charter bus travelers will demonstrate very much about the need or lack of need for an additional broker. This is the very reason why it seems extraordinary that the Commission should place exclusive reliance on evidence of this kind. If this evidence is superficial, this seems an obvious occasion to seek facts upon which to employ administrative expertise. The Providence-Pawtucket-Cranston area covers an ascertainable number of square miles, contains an ascertainable number of people, has an ascertainable number of existing brokers, each of an ascertainable size and capacity. It would seem possible, in deciding whether the area could use an additional travel broker, to examine comparable metropolitan areas to determine the number and size of brokerage operations that have been able to operate successfully, and to determine how far apart booking offices must be, if both are to survive. The Commission has done no such thing. The only comment bearing on this aspect is found in the report of the Joint Board,

2. The Commission's brief says, "Several witnesses * * * indicated that they would not use the services of other brokers if the Automobile Club's application were denied." Examination of the record discloses that "Several" means "Two," and that "other brokers" means "some of the other brokers." It further appears that of these two witnesses, one had never taken a conducted tour in this country, or sought to, and the other had taken only one conducted tour, not by bus, in 1922. This witness, incidentally, came from Fall River, where the Commission has refused intervenor a license. The quality of such evidence speaks for itself.

3. The ICC's Joint Board's summary of this witness's testimony is as follows: "The witness has had occasion to utilize Collette's brokerage service but has found it to be unsatisfactory. In May, 1964 she went on a tour arranged by Collette to the New York World's Fair, but the hotel provided was very dusty, and its bath tub was unusable for sanitary reasons. Five years previously, on a tour arranged by Collette, the bus was filled with fumes, and the dinner at the hotel was unsatisfactory because coffee was never served."

which the Commission adopted: "Collette serves Providence, but the joint board believes that its service is inadequate to meet all of the demonstrated needs of this large city." Just how these "needs" were "demonstrated" the record does not disclose, and the Joint Board does not say.

The Commission's order granting intervenor a license must be vacated.