BOYD, Acting Chief Justice.
This cause is before us to review a Public Service Commission order establishing the standard for obtaining a transportation brokerage license. We have jurisdiction. Art. V, § 3(b)(3), Fla.Const.
Joseph Land & Company, Inc. applied for three auto transportation broker’s licenses for three different locations, Lake Placid, Leesburg and Lake Wales. The three applications were consolidated for one hearing which petitioners joined as protestants. The hearing examiner recommended that the applications be granted except as to seafood which is not an issue here. Petitioners filed a list of exceptions, asserting that section 323.31(2), Florida Statutes (1977)[1] embodied the same standard con *958 tained in section 323.03(4), Florida Statutes (1977); [2] that the testimony at the hearing did not satisfy the standard; and that the “swing office” at Lake Wales was illegal. The commission denied the exceptions and granted the applications. In re Application of Joseph Land and Company, Inc., Docket Nos. 780154-ATB, 155-ATB, 156-ATB, Order No. 14925 (Fla.Pub.Ser.Comm., 1979). Petitioners seek review raising the same issues listed in their exceptions to the hearing examiner’s recommendation.
Petitioners’ claim that the standard for granting a transportation brokerage license under section 323.31(2), Florida Statutes (1977), is the same as the standard for granting certificates of public convenience under section 323.03(4), Florida Statutes (1977), is without merit. Section 323.03(4) provides that the proposed service must be “required by the present or future public convenience and necessity,” whereas section 323.31(2) provides that the proposed service need only be “consistent with public convenience and necessity.” (Emphasis supplied.) Apparently the latter provision was employed because the public has a lesser need to be protected from excessive competition among brokers than it does from among carriers. See generally, Gray Line Nat’l Tours Corp. v. United States, 380 F.Supp. 263 (S.D.N.Y.1974); Collette Travel Service Inc. v. United States, 263 F.Supp. 302 (D.R.I.1966). The divergent purposes of the statutes support the conclusion that an applicant for a broker’s license does not have to show as great a need for his service as does an applicant for a motor carrier certificate.
This conclusion is further supported by other differences between the two statutes. Section 323.03(4)(b) specifically provides that the commission must make an affirmative finding as to the “present necessity for the certificate.” Conversely, section 323.31(2) provides that the “[C]om-mission may deny any [broker’s] application when the need for the proposed service is not affirmatively shown.” By using the permissive word may, the legislature has implied that the commission may grant an application for a broker’s license when the need for the proposed service is not affirmatively shown.
We are not unmindful that our interpretation of section 323.31(2) requires an applicant for a broker’s license “to establish by substantial evidence . . . that the *959 issuance of a license to him would be consistent with the public convenience and necessity,” while at the same time relieving the applicant from affirmatively showing the need for issuing the license. This seeming contradiction can be resolved by finding that it is possible for an applicant to prove that the proposed service is consistent with public necessity without having to affirmatively show a public need for the service. Proof that a service is consistent with public necessity may be established by evidence showing the service is not totally duplica-tive of existing service. Such evidence would not “affirmatively” establish a need for the new service, but would at least tend to show the new service is not inconsistent with public necessity.
We now reach the issue of whether there is competent substantial evidence supporting the commission’s decision to grant the three applications. The commission found that the applicant had affirmatively shown the existence of a public need for a license at two of the locations. A score of witnesses testified to the need and convenience for a broker’s services at Lake Placid and Leesburg. Such extensive testimony is more than an adequate basis for supporting the commission’s determination.
As for the third application for a broker’s license at Lake Wales, although the commission found that an affirmative need had not been established, it granted the application. Lake Wales is presently being serviced by Sunland Brokers, Inc., which is owned and operated by the same person, Joseph Land, who owns and operates the applicant company. Mr. Land testified that a second license was needed which could be transferred from one location to another on a seasonal basis. Other witnesses’ testimony concerning the need for more brokers during the peak seasons establishes that the granting of the license would be consistent with public necessity.
Petitioner’s third point is that the Lake Wales license establishes a “swing office” in violation of section 323.31(3)(c), Florida Statutes (1977),[3] and Rule 25-5.124, Florida Administrative Code.[4] Those provisions provide that a separate license is required for each location a broker conducts business. But the commission may grant a seasonal transfer from one locality to another upon request. Rule 25-5.126, Fla.Admin. Code.[5] Since the commission has not *960 granted approval for the applicant to operate at any location other than mentioned on the license, it has not violated either the statute or its rules.
The order under review is affirmed.
It is so ordered.
OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.

. Issuance of license; hearing; protest. A transportation brokerage license shall be issued to any applicant therefor, who is found to be qualified, as hereinafter provided, to perform the transportation brokerage services proposed in his application and who is found to have complied with the provisions of this section and the requirements, rules and regulations of the commission thereunder; otherwise, such application shall be denied. Upon the filing of the application and the payment of the fees hereinafter provided, the commission shall set a time for a public hearing and shall at the same time give written notice thereof to each *958 transportation broker holding a license to do business anywhere in the state. At such public hearing the applicant will be required to establish by substantial evidence the statements made in his application as well as the fact that the issuance of a license to him would be consistent with public convenience and necessity. In issuing any such license the commission shall consider the effect of the proposed service upon transportation brokerage as a whole within the service area sought by the applicant. The commission may deny any such application when the need for the proposed service is not affirmatively shown.

. Issuance of certificate.—A certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements and rules thereunder of the commission, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity. In determining whether such certificate shall be granted, the commission, among other things, must specifically consider, and in a contested proceeding make affirmative findings concerning, each of the following elements:
(a) Whether existing transportation service of all kinds is adequate to meet the reasonable public needs.
(b) The present necessity for the certificate in relation to the volume of existing or projected future traffic over such route or in such territory.
(c) The financial ability of the applicant to furnish adequate, continuous, and uninterrupted service at the times required therefor, and to meet the financial obligations of the service which the carrier proposes to perform.
(d) The effect on existing transportation facilities and service of all kinds, and particularly whether the granting of such certificate will or may seriously impair essential public service as provided by existing motor carriers.
(e) The fitness of the applicant properly to perform the proposed service and to conform to provisions of this part and the rules of the commission.
(f) The feasibility of the transportation proposed.

. Localities or locations from which the applicant desires to operate shall be stated as precisely as possible and if possible shall be stated by reference to a particular incorporated municipality. License shall be issued according to the localities or locations stated in the application therefor and shall authorize the applicant to do business only from the localities or locations stated. Nothing herein contained shall be interpreted as preventing any transportation broker from holding licenses to do business from more than one locality or location but a separate license shall be required for each locality or location from which business is done; provided, however, upon application to and approval by the commission, licensed transportation brokers engaged exclusively in procuring transportation for seasonal commodities, may, upon terminating seasonal operations in a given locality, move to another locality and continue such seasonal operations without procuring an additional license or licenses for such subsequent places of business.

. (1) A license shall be required for each location from which a broker conducts business. Each location shall be precisely described by setting forth the street address and the name of the city, town or village. If the business is located in unincorporated territory, the nearest readily identifiable location should be stated. Reference should be made to a public road.
(2) A business location is a place where business is transacted by a transportation broker for a shipper in relation to the movement of the shipper’s property by a motor carrier, such as: Selling or offering for sale any transportation of property except cut flowers and flower bulbs, negotiating for, or holding himself or itself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes or contracts for such transportation.

.(1) No transportation broker, holding a license issued by this Commission, shall transfer the permanent business location of such license to a seasonal location without prior approval of the Commission; neither shall such license be transferred from an approved seasonal location to another seasonal location without such prior approval of the Commission.
(2) When a transportation broker’s license is to be transferred from one locality to another, on a seasonal basis, the licensee shall submit a request on a form prescribed by the Commis *960 sion. Such forms may be obtained from the Transportation Department, Florida Public Service Commission, 101 East Gaines Street, Tallahassee, Florida 32304.
Requests shall be submitted in duplicate and, after approval by the Commission, the original copy shall be returned to the licensee to become a part of the license for the duration of the transfer period.
(3) If a transportation broker’s license is on seasonal transfer, it must be immediately transferred back to its permanent location or to another seasonal location at the end of the season or after sixty (60) days, whichever occurs first. Should the season extend beyond sixty days, an extension for a reasonable period of time may be granted at the current seasonal location. Requests for such extension shall be made on the form used for seasonal transfers and the same procedure shall be used in approving such extensions as in approving seasonal transfers.